[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JUNE 13, 2006
THOMAS K. KAHN
CLERK

_____

No. 05-15067

_____

D. C. Docket No. 04-00185-CR-T-N

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ROBERT EARL DOWD,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Alabama

_____

**(June 13, 2006)**

Before HULL, WILSON and GOLDBERG[*], Circuit Judges.

HULL, Circuit Judge:

Appellant Robert Earl Dowd ("Dowd") appeals his convictions and 305

_____

[*]Honorable Richard W. Goldberg, United States Court of International Trade, sitting by designation.

months' total sentence for robbing a United States postmaster, and in so doing placing his life in jeopardy by the use of a dangerous weapon, in violation of 18 U.S.C. §§ 2 and 2114(a); using a firearm in the commission of a crime of violence, namely the postal robbery, in violation of 18 U.S.C. §§ 2 and 924(c)(1)(A); unlawful conversion of thirteen postal money orders, in violation of 18 U.S.C. § 500; and felony possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). After review and oral argument, we affirm.

## I. FACTS

On August 30, 2004, Dowd and his female accomplice, Bobbie Jo Lee ("Lee"), robbed the Fitzpatrick Post Office in rural Bullock County, Alabama. Fitzpatrick postmaster Bobby Adair ("Adair") testified at Dowd's trial. According to Adair, Dowd pulled a gun and demanded that Adair hand over the money order machine, blank money orders, and money. The robbery was recorded on the post office's video recorder.[1]

On August 31, 2004, Lee confessed to U.S. Postal Inspectors that she and Dowd had committed the robbery. Lee led the inspectors to where Lee and Dowd had discarded the stolen money order machine. Later, the inspectors discovered that Dowd had negotiated a number of the stolen money orders, and the inspectors

---

[1]At oral argument, Dowd's counsel conceded that Dowd is clearly identifiable in the video.

found the remaining stolen money orders in Dowd's car. The gun used in the robbery was never recovered.

On September 2, 2004, Dowd was arrested in Florida. Prior to interrogating Dowd, the inspectors presented Dowd with a <u>Miranda</u> rights form.[2] The form includes a "WARNING" and a "WAIVER" section, each followed by a signature line. The "WARNING" section on the top half of the form states that "before you are asked any questions, you must understand your rights," and then lists the <u>Miranda</u> rights. Dowd signed beneath the warning, acknowledging that "I have read this statement of my rights (This statement of my rights has been read to me) and I understand what my rights are."

The "WAIVER" section on the bottom half of the form provides a space for a suspect to sign that he is willing to answer questions without a lawyer and that he was not coerced to speak. Dowd chose not to sign the waiver. Instead, one of the inspectors wrote on the form that Dowd "did not want to sign [the waiver], but does understand [his <u>Miranda</u> rights]."

Although he did not sign the waiver, Dowd verbally agreed to talk. The inspectors described accomplice Lee's account of the robbery and her claim that Dowd had attempted to rape her. Dowd responded by denying any sexual

---

[2]<u>See</u> <u>Miranda v. Arizona</u>, 384 U.S. 436, 86 S. Ct. 1602 (1966).

3

impropriety with Lee, but admitted that they had committed the robbery. Dowd first admitted that he had used a gun in the robbery, but then altered his story, claiming that he had used a water gun or a pellet gun rather than a real gun.

An inspector asked Dowd if he wanted to write down his side of the story, to which Dowd responded yes. The inspector reread Dowd his rights and wrote out a statement of the facts as described by Dowd. Dowd signed the statement, which included Dowd's averment that he "was waiving his rights to silence and counsel, and that the statement was true and correct." In the written statement, Dowd admitted that he and Lee robbed the post office and that he used a gun during the robbery. The written statement in no way suggested that the gun Dowd used in the robbery was a toy.

## II.  PROCEDURAL HISTORY

### A.    Indictment and Conviction

On November 30, 2004, a grand jury for the Middle District of Alabama returned a twenty-nine count superseding indictment (hereinafter "the indictment") against Dowd and Lee. Count One of the indictment charged that on August 30, 2004, Dowd and Lee robbed the postmaster of the Fitzpatrick Post Office, and in so doing put the life of the postmaster in jeopardy by use of a dangerous weapon, in violation of 18 U.S.C. §§ 2 and 2114(a). Count Two charged Dowd and Lee

4

with using a firearm in the commission of a crime of violence, specifically the postal robbery, in violation of 18 U.S.C. §§ 2 and 924(c)(1)(A). Counts Three through Fifteen charged that Dowd stole and fraudulently converted money orders he acquired in the robbery, in violation of 18 U.S.C. § 500.

Counts Sixteen through Twenty-Eight of the indictment applied only to co-defendant Lee. Count Twenty-Nine charged Dowd as an ex-felon in possession of a firearm during the week prior to the postal robbery, in violation of 18 U.S.C. § 922(g)(1). The government proffered evidence that Dowd sold a Rossi .357 revolver on August 26, 2004, and attempted to either buy or borrow it back on August 30, 2004, the day of the postal robbery.

Before trial, the case was assigned to United States District Judge Myron Thompson, who denied Dowd's motions to suppress his custodial statement and to sever the Count Twenty-Nine firearm charge. On March 3, 2005, Dowd's case was reassigned to United States District Judge Truman M. Hobbs. After a two-day trial before Judge Hobbs on March 14 and 15, 2005, the jury found Dowd guilty of Counts One through Fifteen and Count Twenty-Nine, all the counts charged as to Dowd in the indictment.

B. **Sentencing**

Judge Hobbs held sentencing hearings on May 31, 2005 and June 16, 2005.

At the end of the June 16, 2005 hearing, Judge Hobbs continued sentencing because certain sentencing issues had yet to be resolved. Shortly thereafter, Judge Hobbs withdrew from the case, and on June 21, 2005, the case was reassigned from Judge Hobbs back to Judge Thompson. Dowd moved for a new trial on the basis of the changes in judge, a motion which Judge Thompson denied.

Judge Thompson held a final sentencing hearing on September 2, 2005. At the hearing, the government renewed an earlier oral motion to dismiss Counts Three through Fifteen against Dowd, and the motion was granted. Thus, sentencing involved only Dowd's convictions on Counts One, Two, and Twenty-Nine.

The presentence investigation report ("PSI") summarized Dowd's criminal history, which included nine felony convictions since 1957. Because the PSI stated that at least three of these convictions qualified as violent felonies, the PSI recommended that Dowd be sentenced under the Armed Career Criminal Act ("ACCA"). See 18 U.S.C. § 924(e)(1).

Dowd's status as an armed career criminal affected the PSI's calculated guidelines range in two ways. First, although the PSI assigned Dowd six criminal history points for his prior convictions (qualifying him for criminal history category III), the PSI recommended that as an armed career criminal Dowd's

criminal history category should be IV.  See U.S.S.G. § 4B1.4(a) and (c)(3).

Second, while the PSI calculated a combined offense level of 28 for Counts One

and Twenty-Nine, the PSI recommended that as an armed career criminal Dowd's

offense level should be raised to 33.  See U.S.S.G. § 4B1.4(a) and (b)(3)(B).[3]

An offense level of 33 and criminal history category of IV yielded a

guidelines range of 188 to 235 months' imprisonment for Counts One and Twenty-

Nine.[4]  In addition, the ACCA subjected Dowd to a statutory mandatory minimum

sentence of fifteen years (180 months) for the felon-in-possession charge in Count

Twenty-Nine.  See 18 U.S.C. §924(e)(1).

As for Count Two, Dowd's § 924(c)(1)(A) conviction was for using a

firearm during the commission of a crime of violence.  18 U.S.C. § 924(c)(1)(A).

Section 924©) provides for a seven-year sentence, consecutive to the sentence for

the crime of violence itself, if the defendant brandished a firearm during the

commission of the crime of violence.  See 18 U.S.C. § 924(c)(1)(A)(ii); 18 U.S.C.

§ 924 (c)(1)(D)(ii); United States v. Rahim, 431 F.3d 753, 757 (11th Cir. 2005),

cert. denied, __ U.S. __, 126 S. Ct. 1820 (2006).

---

[3]It is unclear to us why the PSI did not recommend a criminal history category of VI and an offense level of 34 pursuant to U.S.S.G. §§ 4B1.1, 4B1.4(b)(2) and 4B1.4(c)(2).  However, the government does not cross-appeal Dowd's sentence, and we decline to consider an issue raised by neither party.

[4]A criminal history category of III and offense level of 28 would have yielded a guidelines range of 97 to 121 months' imprisonment.

At sentencing, Dowd objected that he was improperly classified and should not be sentenced under the ACCA. After overruling Dowd's objection, the district court sentenced Dowd to concurrent sentences of 221 months' imprisonment for Counts One and Twenty-Nine and a consecutive sentence of 84 months' imprisonment for Count Two, for a total of 305 months' imprisonment.

## III. APPEAL OF CONVICTION

### A. Severance

On appeal, Dowd argues that the district court abused its discretion in denying his motion to sever Count Twenty-Nine. Count Twenty-Nine charged Dowd with being a felon in possession of a firearm between the dates of August 23, 2004 and August 27, 2004. Because this period of time preceded the robbery of the post office on August 30, 2004, Dowd argues that this firearms charge was unrelated to the robbery charges, and that he was prejudiced because his prior felony convictions became admissible as elements of the firearms charge.

According to Federal Rule of Criminal Procedure 8(a), an indictment "may charge a defendant in separate counts with 2 or more offenses if the offenses charged . . . are of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan." Fed. R. Crim. P. 8(a). "'Rule 8 is broadly construed in favor of the initial

8

joinder.'" United States v. Dominguez, 226 F.3d 1235, 1238 (11th Cir. 2000) (citation omitted). Moreover, "we will not reverse the denial of a severance motion absent a clear abuse of discretion resulting in compelling prejudice against which the district court offered no protection." United States v. Hersh, 297 F.3d 1233, 1244 (11th Cir. 2002) (citing United States v. Badia, 827 F.2d 1458, 1466 (11th Cir.1987)); see also United States v. Ramirez, 426 F.3d 1344, 1352 (11th Cir. 2005); United States v. Lopez, 898 F.2d 1505, 1510 (11th Cir. 1990).

The indictment alleged and evidence at trial showed that Dowd sold a gun four days immediately before the postal robbery and unsuccessfully attempted to borrow back that gun on the day of the postal robbery. Dowd argues that because he did not possess this gun on the actual day of the postal robbery and did not use the particular gun in the robbery, the two crimes were not part of "a common scheme or plan." Fed. R. Crim. P. 8(a).

We need not decide whether these charges were improperly joined, because no compelling prejudice arose in this case in any event. First and foremost, the jury would have heard all of the firearms-related evidence even in a severed trial on only the robbery charge. Had Dowd been tried separately for robbery of the postmaster, the firearms-related evidence would have been admitted because Dowd's very recent possession of a real firearm tended to contradict his primary

9

defense at trial that he used only a toy gun in the robbery.  The firearms-related evidence was also admissible because Dowd's attempt to borrow a gun on the very day of the armed robbery suggested intent to commit a crime of violence that day.

Second, because the parties stipulated to Dowd's status as a convicted felon, the jury heard no details about Dowd's prior criminal activity, and his criminal past was barely mentioned at trial and was in no way emphasized.  More importantly, the evidence presented of Dowd's guilt in the robbery was extensive and overwhelming.[5]

Under the particular factual circumstances of this case, we do not believe that the exposure of the jury to the bare fact that Dowd was a convicted felon created the kind of specific and compelling prejudice that warrants reversal for failure to sever.  See United States v. Jiminez, 983 F.2d 1020, 1023 (11th Cir. 1993) (finding no prejudice from district court's failure to sever felon-in-possession charge where trial record gave "no indication that [defendant's] prior criminal activity was unduly emphasized at trial"); see also United States v.

---

[5]The evidence was overwhelming that Dowd committed the postal robbery, and he concedes as much.  Nevertheless, Dowd contends that the evidence was not overwhelming that he used an actual gun in the crime rather than a toy or pellet gun, which would be relevant to Dowd's sentence on Count One and his conviction on Count Two.  Contrary to Dowd's contention, extensive evidence indicated that Dowd used an actual gun in the crime, including (1) the postmaster's eyewitness testimony that the gun appeared real; (2) the video recording of the robbery, which allowed the jury to see the gun for themselves; and (3) Dowd's written confession, in which he stated that he used a gun during the robbery and discarded it afterwards, giving no indication that it was a toy.

10

Bennett, 368 F.3d 1343, 1351 (11th Cir. 2004), vacated on other grounds, 543 U.S. 1110, 125 S. Ct. 1044 (2005). Thus, we find no reversible error in the district court's denial of the motion to sever.

**B.      Admissibility of Dowd's Confession**

Dowd contends that his oral and written custodial statements to inspectors were involuntary and that their admission at trial violated his Miranda rights. Dowd asserts that the statements should not have been admitted because he signed only the "WARNING" but not the "WAIVER" portion of the form presented by the U.S. Postal Inspector at the time of his interrogation. Dowd's argument lacks merit.

The bare fact that Dowd initially did not sign the waiver portion of the form in no way supports Dowd's contention that his statement was coerced. Although Dowd did not sign the waiver, he signed the portion of the form expressing that he understood his Miranda rights and he thereafter expressed his willingness to listen to the inspectors. After hearing the inspectors' version of events, Dowd not only described the crime verbally, he signed the summary of his comments drafted by the inspector. This written statement signed by Dowd included its own Miranda rights waiver, specifically expressing that Dowd "was waiving his rights to silence and counsel, and that the statement was true and correct."

11

The government has no duty to cease interrogating a suspect "where the suspect's invocation of [his Miranda rights] is equivocal." United States v. Acosta, 363 F.3d 1141, 1152 (11th Cir. 2004); see also United States v. Mikell, 102 F.3d 470, 476 (11th Cir. 1996). Here, Dowd did not suggest even equivocally that he wished to cease questioning. Instead, Dowd continued talking immediately after declining to sign the waiver, and he eventually signed the separate but roughly identical waiver at the bottom of his written confession.

In multiple instances, we have allowed the admission of a custodial statement under circumstances indistinguishable from these. See Eleuterio v. Wainwright, 587 F.2d 194, 196 (5th Cir. 1979)[6] (stating that "a refusal to sign [a consent to interview form] does not, without more, establish the absence of an effective waiver of Miranda rights"); United States v. Patman, 557 F.2d 1181, 1182 (5th Cir. 1977) (finding defendant's confession admissible despite his refusal to sign waiver because the "defendant stated that he was willing to answer questions and that he understood his rights"); United States v. McDaniel, 463 F.2d 129, 135 (5th Cir. 1972) (admitting confession despite refusal to sign waiver because "a detainee may make statements that are quite voluntary without signing a written

[6]The Eleventh Circuit has adopted as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981. Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

waiver"). We decline to disturb settled precedent in this case.

## C. Double Jeopardy

On appeal, Dowd renews his argument that the Double Jeopardy Clause of the Fifth Amendment was violated because the consecutive sentences as to Counts One and Two punish Dowd twice for the same offense, the robbery at gunpoint of the Fitzpatrick post office.[7] Under Supreme Court and our circuit precedent, Dowd's claim clearly fails.

The Double Jeopardy Clause protects a defendant against the imposition of multiple punishments for the same offense. United States v. Kaiser, 893 F.2d 1300, 1303 (11th Cir. 1990). However, the Clause "does no more than prevent the sentencing court from prescribing greater punishment than the legislature intended." Missouri v. Hunter, 459 U.S. 359, 366, 103 S.Ct. 673, 678 (1983). "If the statutes under which the defendant was sentenced specifically authorize cumulative punishments for the same offense, a court may impose cumulative punishment without running afoul of the Double Jeopardy Clause." Kaiser, 893 F.2d at 1304 (citing Hunter, 459 U.S. at 368, 103 S.Ct. at 679); see also Williams v. Singletary, 78 F.3d 1510, 1512-13 (11th Cir. 1996); United States v. Stewart, 65

---

[7]"This Court reviews de novo, as a pure question of law, any possible violation of the Double Jeopardy Clause." United States v. Thurston, 362 F.3d 1319, 1322 (11th Cir. 2004).

13

F.3d 918, 927 (11th Cir. 1995); United States v. Moore, 43 F.3d 568, 571 (11th Cir. 1994).

Dowd received a 221 month sentence on Count One for violating 18 U.S.C. § 2114(a), which indisputedly describes a crime of violence.[8] Dowd also received a consecutive seven-year sentence for his Count Two conviction for using a handgun in the commission of a crime of violence, in violation of 18 U.S.C. § 924(c). Where a defendant brandishes a firearm during the course of a crime of violence, § 924(c) explicitly requires the imposition of a seven-year sentence "in addition to" whatever punishment is due for the crime of violence itself. 18 U.S.C. § 924(c)(1)(A)(ii).

We have previously concluded that "Congress specifically authorized the cumulative punishment in section 924(c)." United States v. Ricks, 817 F.2d 692, 699 (11th Cir. 1987); see also United States v. Martin, 38 F.3d 534, 535 (11th Cir. 1994) (reiterating that Congress "intended to impose cumulative punishments for violations of § 924(c) and all crimes of violence . . . "). Because § 924(c) intentionally imposes a cumulative sentence, the seven-year consecutive sentence

---

[8]Section 2114(a) criminalizes any assault with intent to rob or any robbery of a "person having lawful charge, control, or custody of any mail matter or of any money or other property of the United States." 18 U.S.C. § 2114(a). Section 2114(a) imposes a maximum sentence of twenty-five years where the assailaint puts the victim's life in jeopardy by the use of a dangerous weapon, as Dowd was charged with doing in the indictment.

14

imposed for Count Two did not violate the Double Jeopardy Clause.

Dowd recognizes that the Double Jeopardy clause does not prevent the imposition of cumulative punishments where Congress intended to authorize such cumulative punishments. Dowd contends, however, that merger of Counts One and Two is required because of the manner in which the district court instructed the jury in this particular case. Dowd insists that because the district court described the crimes identically, the charges in this case violate the "same elements" test articulated in Blockburger v. United States, 284 U.S. 299, 304, 52 S.Ct. 180, 182 (1932) (stating that "where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of an additional fact which the other does not").

Dowd's argument fails for the reasons the defendant's claim failed in Martin. In Martin, the defendant was convicted of carjacking with a firearm, in violation of 18 U.S.C. § 2119,[9] and of using a firearm during a crime of violence, in violation of 18 U.S.C. § 924(c). Martin, 38 F.3d at 535. Believing that sentencing the defendant for both crimes would violate the Double Jeopardy Clause, the district court refused to sentence the defendant for the § 924(c)

---

[9]At the time of Martin, use of a firearm was an explicit element of 18 U.S.C. § 2119. See Singleton, 16 F.3d at 1422-23.

15

violation. We reversed, citing with approval the Fifth Circuit's opinion in United States v. Singleton, 16 F.3d 1419 (5th Cir. 1994). Martin, 38 F.3d at 535. In Singleton, our sister circuit determined that the defendant's consecutive sentences did not violate the Double Jeopardy Clause even though "proof of a violation of § 2119 always proves a violation of § 924(c), and the two statutes fail the Blockbuster 'same elements' test." Singleton, 16 F.3d at 1425. Where, as in § 924(c), Congress has authorized the imposition of consecutive sentences, it is irrelevant for Double Jeopardy purposes whether or not the crimes fail the Blockburger "same elements" test. See id. at 1420.

Accordingly, we need not consider whether the elements of 18 U.S.C. § 2114 and 18 U.S.C. § 924(c) fail the Blockburger "same elements" test because the Blockburger test is not controlling where the legislative intent to impose cumulative punishments is clear. See Kaiser, 893 F.2d at 1304 (citing Hunter, 459 U.S. at 368, 103 S. Ct. at 679). As the Supreme Court has instructed, "[e]ven if the crimes are the same under Blockburger, if it is evident that a state legislature intended to authorize cumulative punishments, a court's inquiry is at an end." Ohio v. Johnson, 467 U.S. 493, 499 n.8, 104 S. Ct. 2536, 2541 n.8 (1984). The reasoning in Johnson is equally dispositive where, as here, it is the federal legislature which authorized cumulative punishments.

16

We also note that Dowd errs by focusing solely on the particular charges in his indictment and the jury instructions offered in his trial. The <u>Blockburger</u> test "focuses on the statutory elements of the offenses, not on their application to the facts of the specific case before the court." <u>Singleton</u>, 16 F.3d at 1422; <u>see also</u> <u>Iannelli v. United States</u>, 420 U.S. 770, 785 n.17, 95 S. Ct. 1284, 1293 n.17 (1975) (stating that the <u>Blockburger</u> test "focuses on the statutory elements of the offense" and that the test may be satisfied "notwithstanding a substantial overlap in the proof offered to establish the crimes"); <u>United States v. Woodward</u>, 469 U.S. 105, 106-07, 105 S. Ct. 611, 611-12 (1985) (finding no Double Jeopardy violation even where "[t]he same conduct . . . formed the basis of each count"). Regardless, as discussed above, we need not determine whether 18 U.S.C. § 2114 and 18 U.S.C. § 924(a) fail the <u>Blockburger</u> test because the cumulative sentence in § 924(a) was authorized by Congress.

## IV. APPEAL OF SENTENCE

### A. Armed Career Criminal Act

Dowd argues on multiple grounds that he should not have been sentenced as an armed career criminal under the ACCA. First, Dowd claims that because his three prior felonies were not charged in the indictment and proven beyond a reasonable doubt to the jury, his sentencing pursuant to the ACCA was

17

unconstitutional under the Supreme Court's line of reasoning in Apprendi v. New Jersey, 530 U.S. 466, 120 S. Ct. 2348 (2000), Blakely v. Washington, 542 U.S. 296, 124 S. Ct. 2531 (2004), and Shepard v. United States, 544 U.S. 13, 125 S. Ct. 1254 (2005).[10]

We reject this argument. As Dowd recognizes, the Supreme Court made clear in Almendarez-Torres v. United States, 523 U.S. 224, 226, 118 S. Ct. 1219, 1222 (1998), that the Sixth Amendment does not require the government to allege in its indictment or to prove beyond a reasonable doubt that a defendant's prior convictions qualify him for enhanced sentencing. Dowd asserts that the prior convictions exception to Apprendi carved out by Almendarez-Torres should be overturned in light of the line of cases cited above, particularly Shepard, but this argument is to no avail. As we have previously explained, we are bound by Almendarez-Torres until it is explicitly overruled by the Supreme Court. United States v. Greer, 440 F.3d 1267, 1275 (11th Cir. 2006).

Dowd next contends that even assuming Almendarez-Torres remains valid and prior convictions need not be charged in the indictment or proven beyond a reasonable doubt, the government still failed to present sufficient evidence to warrant sentencing Dowd as an armed career criminal. Specifically, Dowd

_____

[10]Dowd raises no other Apprendi-based claim except as to the use of his prior convictions to enhance his sentence.

18

contends that the evidence presented by the government to prove Dowd's three qualifying convictions under the ACCA did not satisfy the requirements of Taylor v. United States, 495 U.S. 575, 110 S. Ct. 2143 (1990), and Shepard. We review Taylor, Shepard and the certified documents in the record as to Dowd's prior convictions and guilty pleas, and then explain why Dowd's arguments lack merit.

In Taylor, the Supreme Court discussed Congress's choice to include convictions for "burglary" in the ACCA's list of predicate violent felonies. See 18 U.S.C. § 924(e)(2)(B)(ii); Taylor, 495 U.S. at 599-600, 110 S.Ct. at 2158-59.[11] The Supreme Court noted that many states define "burglary" differently, often in terms broader than burglary's definition at common law. The Supreme Court expressed doubt that Congress intended to subject defendants to enhanced sentencing under the ACCA merely on the basis of whether a state had used the word "burglary" to define the defendants' particular offense. Taylor, 495 U.S. at 599-600, 110 S.Ct. at 2158-59. After a lengthy review of Congressional intent, the Supreme Court concluded that only prior convictions for "generic burglary,"

_____

[11]The ACCA defines the term "violent felony" to mean
any crime punishable by imprisonment for a term exceeding one year . . . that –
(i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or
(ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.
18 U.S.C. § 924(e)(2)(B).

19

defined as an "unlawful or unprivileged entry into, or remaining in, a building or structure, with intent to commit a crime," qualify as predicate crimes of violence under the ACCA's inclusion of the term "burglary." See id. at 599, 110 S. Ct. 2158.

In Shepard, the Supreme Court restricted the types of evidence that a sentencing court may use to establish that a defendant's prior burglary conviction is a qualifying "generic burglary" under Taylor. See Shepard, 544 U.S. at 24, 125 S. Ct. at 1262; Greer, 440 F.3d at 1275. The Supreme Court expressed concern that a defendant's Sixth Amendment right to trial by jury might be compromised if a sentencing court were empowered to make an independent inquiry into whether the facts of a defendant's prior burglary conviction meet the Taylor definition of a "generic burglary" warranting enhanced sentencing. Shepard, 544 U.S. at 24, 125 S. Ct. at 1262. In order to insulate the ACCA from "serious risks of unconstitutionality," the Supreme Court held that when determining whether a defendant's prior convictions qualify as felony crimes of violence under the ACCA, the sentencing court may refer only to "the terms of the charging document, the terms of a plea agreement or transcript of colloquy between judge and defendant in which the factual basis for the plea was confirmed by the defendant, or to some comparable judicial record of this information." Shepard,

20

544 U.S. at 25-26, 125 S. Ct. at 1262-63.

According to the PSI prepared prior to Dowd's first sentencing hearing on May 31, 2005, Dowd had nine previous felony convictions spanning over forty years. However, as the PSI itself acknowledged, "[t]he majority of the information [about Dowd's criminal history] was obtained from previous presentence reports" prepared in Dowd's previous sentencings. PSI, ¶ 99. The government did not attach original documentation from the convictions themselves to the PSI. Rather, to confirm these prior convictions, the government offered the testimony of U.S. Probation Officer Robert Longshore, who reviewed his understanding of Dowd's criminal history based on the prior PSIs and on Longshore's own supervision of Dowd. Dowd objected to this evidence on Taylor and Shepard grounds.

The district court did not rule on Dowd's objection and continued sentencing until June 21, 2005. On June 16, 2005, the government submitted additional documentation concerning four of Dowd's previous convictions. These documents included (1) the transcript of Dowd's June 22, 1967 guilty plea for second degree burglary in Dallas County, Alabama, with a sentence imposed of imprisonment for one year and one day; (2) the transcript of Dowd's October 7, 1969 guilty plea for second degree burglary in Dallas County, Alabama, with a sentence imposed of three years' imprisonment; (3) a copy of the charging document and a transcript of

21

Dowd's February 17, 1970 guilty plea for burglary and grand larceny in Montomery County, Alabama, with a sentence imposed of three years' imprisonment; and (4) a copy of the charging document and the entry of judgment and sentence of thirty years' imprisonment in Dowd's January 17, 1974 conviction in Clay County, Florida for armed robbery.

At the June 21, 2005 sentencing hearing, the district court again did not rule on Dowd's Shepard and Taylor objections and sentencing was continued for a second time. A third sentencing hearing was held on September 2, 2005, at which time the district court overruled Dowd's objections. Citing the records listed above, the district court found that "the Government has proved beyond a reasonable doubt – well, by a preponderance of the evidence, and indeed beyond a reasonable doubt, that Defendant Dowd committed at least three violent felonies through records that comply with Shephard [sic] and Taylor." Accordingly, the district court sentenced Dowd as an armed career criminal under the ACCA.

We conclude without difficulty that the district court's ruling was correct because all four of Dowd's prior convictions listed above qualify as predicate "violent felonies" under the ACCA. Dowd's January 17, 1974, armed robbery conviction is undeniably a conviction for a violent felony. See 18 U.S.C. § 924(e)(2)(B)(i). The three convictions for burglary or second degree burglary

22

described also qualify as predicate violent felonies under the standard set forth in Taylor. Dowd's June 22, 1967, and October 7, 1969, convictions for second degree burglary necessarily qualify as "generic burglary" convictions because Alabama law at the time of Dowd's convictions defined second degree burglary identically to the Taylor definition of generic burglary. See Livingston v. State, 216 So. 2d 731, 735-36 (Ala. Ct. App. 1968). Although Dowd's February 17, 1970, conviction identified his offense as simply "burglary," the indictment for this offense, to which Dowd pleaded guilty, makes clear that the conviction was also for a crime of generic burglary.[12]

Dowd contends that under Shepard, the district court erred by drawing conclusions about his prior convictions on the basis of the above described records. Dowd is incorrect. As we stated recently, "Shepard does not bar judges from finding whether prior convictions qualify for ACCA purposes." Greer, 440 F.3d at 1275. Rather, Shepard merely restricts the kinds of records on which the sentencing court may rely when determining whether a defendant's prior convictions qualify him as an armed career criminal under the ACCA. Id.; Shepard, 544 U.S. at 25-26, 125 S. Ct. at 1262-63. The charging documents and

---

[12]According to the indictment, which the government presented as evidence on June 16, 2005, Dowd broke into and entered the "shop, store or warehouse or lodge building of the Fraternal Order of Police" and stole a safe and money.

23

transcripts of Dowd's guilty pleas produced at sentencing and described above clearly satisfy the requirements of Shepard.

We also reject Dowd's argument that the government should not have been allowed to produce these records at the June 22, 2005 hearing because the government "had already rested its case." Sentencing quite obviously was not concluded after the first sentencing hearing on May 31, 2005, nor even after the second sentencing hearing on June 22, 2005. Dowd offers no legal support for his assertion that he cannot be sentenced under the ACCA merely because the government was delayed in procuring thirty-year-old records from Dowd's prior convictions.

Finally, we readily reject Dowd's argument that the government failed to authenticate the transcripts and charging documents described above. All of these records were certified properly by the Clerks of the Montgomery County, Alabama or Dallas County, Alabama Circuit Courts. See Fed. R. Evid. 902(4).

**B.      Substitution of Judges**

Dowd also argues that resentencing is warranted because Judge Hobbs presided over the two-day trial but was replaced by Judge Thompson for sentencing. This argument is meritless.

According to Federal Rule of Criminal Procedure 25(b)(1), "[a]fter a verdict

24

or finding of guilty, any judge regularly sitting in or assigned to a court may complete the court's duties if the judge who presided at trial cannot perform those duties because of absence, death, sickness, or other disability." Fed. R. Crim. P. 25(b)(1). Because Judge Hobbs became absent at the time of sentencing, reassignment of the case to Judge Thompson was proper under Rule 25.

Furthermore, Judge Thompson not only ruled on pretrial motions in Dowd's case, he read the trial transcripts and the transcripts of all later proceedings before Judge Hobbs. See United States v. Dowd, 385 F.Supp.2d 1240, 1242-43 (M.D. Ala. 2005). Accordingly, Judge Thompson was sufficiently familiar with Dowd's trial to sentence him. See United States v. Caraza, 843 F.2d 432, 437 (11th Cir. 1988).

## C.     Reasonableness

Finally, Dowd argues that his 305-month total sentence was "overkill" and was unreasonable under 18 U.S.C. § 3553. Dowd contends that because he is over sixty-five years old, a sentence for twenty-five years' imprisonment is "greater than necessary to achieve the purposes of sentencing." See 18 U.S.C. § 3553(a)(2). Dowd also emphasizes that he suffered through a difficult childhood and upbringing.

After United States v. Booker, 543 U.S. 220, 125 S.Ct. 738 (2005), a district

court, in determining a reasonable sentence, must consider the correctly calculated sentencing range under the advisory guidelines and the factors set forth in 18 U.S.C. § 3553(a). United States v. Talley, 431 F.3d 784, 786 (11th Cir. 2005). Among the factors that a district court should consider at sentencing are the nature and circumstances of the offense, the history and characteristics of the defendant, the need for adequate deterrence and protection of the public, the pertinent Sentencing Commission policy statements, and the need to avoid unwarranted sentencing disparities. See 18 U.S.C. § 3553(a)(1)-(7). "Review for reasonableness is deferential . . . and when the district court imposes a sentence within the advisory Guidelines range, we ordinarily will expect that choice to be a reasonable one." Talley, 431 F.3d at 788. "[T]he party who challenges the sentence bears the burden of establishing that the sentence is unreasonable in the light of both [the] record and the factors in section 3553(a)." Id.

The district court sentenced Dowd to 221 months' imprisonment for Counts One and Twenty-Nine, in the middle of the guidelines range of 188 to 235 months. The consecutive sentence of 84 months imposed for Count Two was required by statute. See 18 U.S.C. § 924(c)(1)(A); 18 U.S.C. § 924 (c)(1)(D)(ii); Rahim, 431 F.3d at 757. Although Dowd's sentence is substantial, he is a career armed criminal with nine prior felony convictions. While it is true that Dowd is over

26

sixty-five years old, it is also undeniable that Dowd committed a violent felony at that age. See also U.S.S.G. § 5H1.1 (stating that while "[a]ge may be a reason to depart downward in a case in which the defendant is elderly and infirm and where a form of punishment such as home confinement might be equally efficient as and less costly than incarceration," age "is not ordinarily relevant in determining whether a departure is warranted").

In sentencing Dowd, the district court considered the factors Dowd emphasizes on appeal, as well as the other factors required under 18 U.S.C. § 3553. Based on the record in this case, Dowd has not shown that his sentence is unreasonable.

**AFFIRMED.**

27