[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JUNE 13 2007
THOMAS K. KAHN
CLERK

_____

No. 06-15927
Non-Argument Calendar

_____

D. C. Docket No. 05-00154-CR-ORL-31-JGG

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

PHILIP ROBERT CRIMI,
a.k.a. Yeta,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(June 13, 2007)

Before DUBINA, CARNES and KRAVITCH, Circuit Judges.

PER CURIAM:

Philip Robert Crimi appeals his convictions and sentences for conspiracy to

possess with intent to distribute and possession with intent to distribute methamphetamine. After a thorough review of the record, we affirm.

I. Background

Crimi and two others were charged by superseding indictment with conspiracy to possess with intent to distribute 500 grams or more of methamphetamine ("meth"), in violation of 21 U.S.C. § 846 (Count 1), and possession with intent to distribute meth, in violation of 21 U.S.C. § 841 (Counts 2-4).[1]

According to the evidence at trial, the DEA initiated an investigation of meth distribution, targeting a man named Hurschel Warnock. Agents arranged several controlled buys from Warnock using confidential informants and obtained wiretaps for Warnock's phone. After gathering evidence, the agents approached Warnock, who agreed to cooperate with authorities and arrange four separate controlled buys from Crimi.[2] Each buy was recorded, as were phone calls between Warnock and Crimi. On the tapes, Warnock and Crimi discussed several meth purchases, Crimi made statements about his own reputation as a drug dealer, and Crimi commented

---

[1] Counts 5 through 8 applied only to the other defendants. The original indictment named Crimi and 19 others for various conspiracy and drug possession charges. Many of the original defendant pleaded guilty and testified against Crimi.

[2] According to the expert testimony at trial and the parties' stipulations, the controlled buys involved 3.5 grams, 1.5 grams, 2 grams, and 27.8 grams respectively.

that he "doesn't cut his drugs."

Following the controlled buys, DEA agents executed a search warrant for Crimi's residence. They did not find any records of drug transactions, which they would typically expect to find; nor did they find any drugs.[3]

Crimi's alleged co-conspirators cooperated with the government and testified at trial as follows:

Shannon Marrs and Crimi used meth together and Marrs sold meth to Crimi in 2004 and 2005. Marrs remembered seeing drugs at Crimi's house and watching Crimi sell drugs to "friends." Marrs also was involved in one of the controlled buys.

Warnock bought meth from Crimi and Marrs and he sold meth to others. Warnock had met Crimi through Donnie Moore and started buying drugs from Crimi in 1999. Warnock purchased "quite a bit" of meth from Crimi over the years, and estimated it could be 40 ounces.

Christie Raye Corzine used drugs with and bought drugs from Crimi beginning in 1998. She estimated that she bought a total of over 500 grams - and maybe as much as 600 grams - since 1998. Corzine also bought from Crimi's partner Mark Schuster until Crimi and Schuster had a disagreement and she went

---

[3] Crimi was arrested when he arrived at the residence in a car belonging to his girlfriend. Agents found meth in the center console of the car.

3

back to Crimi as her supplier. In addition, Corzine had given money she obtained from a student loan to Crimi to front drugs and to invest in his drug dealings. Corzine also met Marrs when Marrs delivered drugs to Crimi. On cross-examination, Corzine admitted that she had lied on a job application with the department of corrections and that she had submitted synthetic urine to pass a drug test in connection with that application, but she denied that her testimony was untruthful.

Michael Moore had met Crimi through his brother Donald Moore, and used drugs with and bought drugs from both Crimi and Schuster. Moore also would distribute meth for Crimi at Crimi's direction. Moore witnessed Crimi deal drugs about 25 times and Moore knew that Marrs would deliver meth to Crimi.

Schuster was Crimi's partner in meth sales and his roommate after the two met in late 1998 or early 1999 through a mutual friend. Schuster kept track of the drug sales with handwritten notes on the back of bank stubs. The stubs from 2002 and 2003 were admitted into evidence, and Schuster explained each notation and amount shown on the stubs. He estimated that the total amount of drugs he and Crimi were involved with was over 36,000 grams. Schuster stopped selling for Crimi in March or April 2003, when the two had a disagreement. At the time the partnership ended in May, Schuster still owed Crimi money for meth. Schuster

4

allowed Crimi to remain in the house without paying rent, but eventually tried to evict him. Schuster admitted that he lied to the court when he stated that he wanted to evict Crimi for failure to pay rent.

Crimi presented no evidence in his defense. The jury convicted Crimi of all four counts, further finding that the amount of drugs involved in the conspiracy was 500 grams or more.

Crimi filed a post-conviction motion for judgment of acquittal and a new trial, asserting that the evidence did not establish the amount of drugs given the lack of scientific evidence as to the amount and the testimony of biased co-conspirators. The court denied the motion.

The probation officer prepared a presentence investigation report ("PSI"), calculating the guidelines range as 210 to 262 months imprisonment, based on the amount of drugs and enhancements for obstruction of justice and role in the offense. The conspiracy count carried a 10-year mandatory minimum sentence under 21 U.S.C. § 841(b)(1)(A). Crimi objected to the factual portion of the PSI, reasserting his innocence. He further challenged the enhancements and the reasonableness of the sentencing range considering the factors in 18 U.S.C. § 3553(a). He also moved for a downward departure or a mitigated sentence under § 3553(a) because the evidence established at most a small-time operation

5

involving the use of drugs with friends and sales to friends over a seven-year period.

At sentencing, the court sustained the objection to the enhancement for the obstruction of justice and sustained in part the objection to the enhancement for role in the offense, finding that a lesser enhancement was proper. In light of the court's rulings, the adjusted guidelines range was 151 to 188 months.

Crimi then argued that he should be sentenced below the guidelines range to the mandatory minimum sentence of 120 months because (a) other crimes were treated less harshly under the guidelines, (b) the co-conspirators in the case received more lenient sentences, and (c) he suffered a life-time addiction to drugs. He noted that the offense was a small-time operation, and, under the § 3553(a) factors, the mandatory minimum was more than reasonable. The court then explained that the sentencing guidelines were advisory and that it had discretion to sentence below the guidelines range, but that it was bound by the mandatory minimum. The court considered the sentencing factors and found that a sentence of 130 months was proper due to the seriousness of the offense, the criminal intent, and the long-time sales. The court specifically found that the sentence would provide sufficient deterrence, and that due to his age, there was no risk to the public after Crimi served his time. The court also noted that the codefendants

6

received lighter sentences because they entered pleas and cooperated with the government. Both Crimi and the government objected to the sentence as unreasonable. Crimi now appeals, challenging the denial of his motion for judgment of acquittal and the reasonableness of his sentence.

II. Discussion

A. Acquittal

After the verdict, Crimi filed a timely post-conviction motion for judgment of acquittal and for a new trial. The arguments raised on appeal, however, are not the same as those raised in the post-conviction motion. In his motion, Crimi challenged the sufficiency of the evidence with respect to the amount of drugs. On appeal, he argues that the evidence was insufficient to establish a single conspiracy rather than multiple conspiracies, that there was no evidence of any agreement, and that his mere presence was insufficient to establish a conspiracy.[4] Thus, we review for plain error. United States v. Hall, 314 F.3d 565, 566 (11th Cir. 2002); see also United States v. Olano, 507 U.S. 725, 731-32, 113 S.Ct. 1770, 1776, 123 L.Ed.2d 508 (1993). "Plain error occurs where (1) there is an error; (2) that is plain or obvious; (3) affecting the defendant's substantial rights in that it was prejudicial and not harmless; and (4) that seriously affects the fairness, integrity, or public

---

[4] We note that Crimi's arguments on appeal apply mainly to his conspiracy conviction and do not apply to the possession conviction.

7

reputation of the judicial proceedings." Hall, 314 F.3d at 566; Olano, 507 U.S. at 732.

"To prove participation in a conspiracy, the government must have proven beyond a reasonable doubt, even if only by circumstantial evidence, that a conspiracy existed and that the defendant knowingly and voluntarily joined the conspiracy." United States v. Garcia, 405 F.3d 1260, 1269 (11th Cir. 2005) (citation omitted). "To satisfy this burden, the government need not prove that the defendant[ ] knew all of the detail[s] or participated in every aspect of the conspiracy. Rather, the government must only prove that the defendant[ ] knew the essential nature of the conspiracy." Id. at 1269-70 (quotations and citation omitted). The government may prove the defendant's knowing participation by direct or circumstantial evidence, "including inferences from the conduct of the alleged participants or from circumstantial evidence of a scheme." Id. (quotations and citation omitted). Mere presence, while not enough to support a conviction, is "a probative factor which the jury may consider in determining whether a defendant was a knowing and intentional participant in a criminal scheme." United States v. Miranda, 425 F.3d 953, 959 (11th Cir. 2005).

We will not reverse convictions because a single conspiracy is charged in the indictment while multiple conspiracies may have been revealed at trial unless

the variance is material and substantially prejudiced the defendants. United States v. Alred, 144 F.3d 1405, 1414 (11th Cir. 1998); United States v. Coy, 19 F.3d 629, 633 (11th Cir. 1994). Because the jury determines the question of fact as to whether the evidence establishes a single conspiracy, the arguable existence of multiple conspiracies does not constitute a material variance from the indictment if, viewing the evidence in the light most favorable to the government, a reasonable trier of fact could have found that a single conspiracy existed beyond a reasonable doubt. See United States v. Adams, 1 F.3d 1566, 1584 (11th Cir. 1993); United States v. Reed, 980 F.2d 1568, 1581 (11th Cir. 1993). Accordingly, we will not disturb the determination of the jury that a single conspiracy existed if supported by substantial evidence. Alred, 144 F.3d at 1414. To decide whether the jury could have found a single conspiracy, we consider "(1) whether a common goal existed; (2) the nature of the underlying scheme; and (3) the overlap of participants." Id.

Here, Crimi cannot show any variance in the charges against him, nor can he show plain error in his conviction, as the evidence was sufficient to establish that he knowingly participated in a single conspiracy. First, viewing the evidence in the light most favorable to the government, the jury could have concluded that there was a single conspiracy. According to the evidence, Crimi was a mid-level

9

drug dealer who obtained drugs from Marrs and sold them to Warnock, Corzine, and Moore. Each of the buyers knew Marrs was a source of drugs for Crimi. And Marrs admitted that he supplied Crimi with drugs that Crimi would then distribute to others. Additionally, the government submitted Crimi's phone conversations in which he discussed his reputation as a dealer and directed Moore to distribute drugs for him.

Moreover, Crimi and Schuster entered into a partnership to distribute the drugs, and Corzine testified that she would buy drugs from both. Corzine also gave Crimi money to invest in drugs, and Schuster invested drug money in marijuana deals. And Moore testified that he observed Crimi in at least 25 sales.

In light of this evidence, a reasonable jury could have determined that this was a single conspiracy in which Crimi operated as a mid-level distributer. Thus, Crimi cannot show any prejudice, and we conclude that the court did not err in denying the motion for judgment of acquittal.

B. Sentence

Crimi argues that the court erred by sentencing him under a mandatory guidelines scheme and improperly enhancing his sentence based on facts not proven to the jury beyond a reasonable doubt. He further argues that a sentence within the guidelines range is not presumptively reasonable, and the court was

required to consider the sentencing factors in § 3553(a) including factors that it would not have been permitted to consider under the mandatory guidelines. Specifically, Crimi asserts the court should have considered his age (he was 54 at the time of the offense), his drug rehabilitation, his life-time as a drug addict, and his current health problems. He asserts that all of these variables warranted a downward departure in his sentence. He also appears to argue that he should have received a departure in his criminal history score.

After Booker,[5] we review a defendant's sentence for reasonableness. United States v. Dowd, 451 F.3d 1244, 1256 (11th Cir. 2006); United States v. Winingear, 422 F.3d 1241, 1244 (11th Cir. 2005); United States v. Crawford, 407F.3d 1174, 1179 (11th Cir. 2005). Review for reasonableness is deferential, and there are a range of sentences that are reasonable. United States v. Talley, 431 F.3d 784, 788 (11th Cir. 2005). Issues raised for the first time on appeal are subject to plain error review. Hall, 314 F.3d at 566.

The district court must follow a two-step process to determine a defendant's sentence by (1) consulting the Guidelines and correctly calculating the Guideline range; and (2) considering the factors under 18 U.S.C. § 3553(a), which include "the nature and circumstances of the offense, the history and characteristics of the

---

[5] 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005).

11

defendant, the need for adequate deterrence and protection of the public, the pertinent Sentencing Commission policy statements, and the need to avoid unwarranted sentencing disparities." 18 U.S.C. § 3553(a)(1)-(7); Talley, 431 F.3d at 786. However, the district court is not required to mention each of the § 3553(a) factors. United States v. Johnson, 451 F.3d 1239, 1244 (11th Cir. 2006); United States v. Scott, 426 F.3d 1324, 1329 (11th Cir. 2005). Crimi bears the burden of showing that his sentence was unreasonable. Talley, 431 F.3d at 788.

Notably, Crimi no longer disputes whether the guidelines were calculated properly. Thus, the only question is whether the sentence imposed was reasonable.

After a thorough review of the record, we conclude that Crimi's arguments are without merit. First, the court did not apply the guidelines in a mandatory fashion, as it expressly stated that the guidelines were advisory. Moreover, the court imposed a sentence below the guidelines range, which it could not have done had it applied mandatory guidelines. Second, there is no issue with whether a sentence within the guidelines range is presumptively reasonable, as Crimi was sentenced below the range.

Third, the court expressly discussed each sentencing factor in imposing sentence. The court then determined that a sentence slightly above the mandatory minimum and well below the low end of the guidelines range would serve the

12

purposes and constitute a reasonable sentence. Crimi has offered nothing to show that his sentence was unreasonable.

Crimi argues for the first time on appeal that his sentence should have been lower due to his poor health, drug abuse and rehabilitation, and age. Crimi cannot show plain error, however, because the court did consider his advanced age and prior drug use when determining the sentence imposed. Crimi's current poor health and his drug rehabilitation do not establish that the sentence imposed was either erroneous or unreasonable. Rather, the court was not permitted to consider Crimi's post-offense behavior. See United States v. Lorenzo, 471 F.3d 1219, 1221 (11th Cir. 2006).

Moreover, Crimi's argument that he should have received a downward departure is misplaced. None of the issues Crimi raises would have justified a downward departure. See U.S.S.G. §§ 5K2.0-5K2.21. Rather, what Crimi sought was a variance, which is a sentence outside the guidelines range based on § 3553(a) factors. This is, in fact, what Crimi received. And the court specifically discussed the variance in determining the sentence. Finally, there was no ability for the court to depart in the criminal history category, as Crimi's category was scored as I, the lowest possible level.

III. Conclusion

For the foregoing reasons, we AFFIRM the convictions and sentences.