[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
June 15, 2007
THOMAS K. KAHN
CLERK

_____

No. 06-11622
Non-Argument Calendar

_____

D. C. Docket No. 05-00028-CR-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

SYLVESTER MIDDLETON, JR.,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Georgia

_____

**(June 15, 2007)**

Before BIRCH, BLACK and MARCUS, Circuit Judges.

PER CURIAM:

Sylvester Middleton, Jr., appeals his conviction for possession of a firearm

and ammunition by a convicted felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2).  On appeal, Middleton asserts that, after being taken into custody, he refused to sign the waiver form indicating that he was waiving his constitutional rights under <u>Miranda</u>.[1]  Middleton contends that, because he did not waive his rights to remain silent and to counsel, the district court erred by allowing the government to introduce into evidence his post-arrest statement that the firearm belonged to him.  He also argues that the government failed to meet its burden of demonstrating that he knowingly and intelligently waived his rights.  Upon review, we conclude that it can be inferred from the totality of the circumstances that Middleton did, in fact, knowingly and voluntarily waive his rights under <u>Miranda</u>.  Therefore, we conclude that the district court did not err in denying his motion to suppress his post-arrest statement.  Accordingly, we AFFIRM his conviction.

## I.  BACKGROUND

A federal grand jury indicted Middleton for possession of a firearm and ammunition by a convicted felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924 (a)(2).  Middleton's criminal record indicated that he had prior felony convictions for, among other charges, possession of marijuana.  Testimony at Middleton's jury trial established that, in the early morning hours of 24 October 2004, an officer

---

[1] <u>Miranda v. Arizona</u>, 384 U.S. 436, 86 S. Ct. 1602 (1966).

2

patrolling a Huddle House parking lot heard a series of gunshots and saw a car exiting the parking lot at a high speed. The officer pursued the vehicle with his patrol vehicle's blue lights flashing, traveling at a speed of 75 to 80 miles per hour. The driver ignored the officer's attempts to get him to pull over. After crashing into a building, the driver exited the car and ran. Another officer pursued and seized the driver, Middleton, and took him into custody. Subsequently, officers at the scene discovered a firearm 10 to 15 feet from where Middleton had been arrested. Investigator Claude Tilman Wade later testified that Middleton stated, during subsequent interrogation at the police station, that the firearm belonged to him.

Prior to trial, Middleton filed a motion to suppress his post-arrest statement that the firearm was his, claiming that it was unclear from the record whether Investigator Wade had continued to question him at the police station after he had requested an attorney. He argued that if he had invoked his right to an attorney before his alleged admission had occurred, suppression of the statement was warranted under Miranda and its progeny. The government responded that the evidence would demonstrate that Middleton invoked his right to counsel after he made his inculpatory admission.

At the suppression hearing, Middleton testified that he first spoke with

3

Investigator Wade at the police department, subsequent to his arrest, and that Investigator Wade did not tape the interview or take notes. Middleton also stated that Investigator Wade never warned him or advised him that he had the right to remain silent and to have an attorney present. Middleton testified that when Investigator Wade asked him about the shooting, Middleton stated that he did not know anything about it. Middleton stated that he asked for an attorney after Investigator Wade told him that somebody had made a statement implicating him in the shooting. He denied that he ever admitted to possessing a gun. Middleton testified that it was not the first time that he had been arrested, and he knew not to talk to the police. On cross-examination, Middleton testified that he was aware of his rights under Miranda, and that he had exercised them by not making a statement to Investigator Wade, other than to state that he knew nothing about the shooting.

Investigator Wade, who was called by Middleton for the purpose of cross-examination, testified that he took brief notes that served as the basis of a report summarizing the interrogation. He testified that Middleton was in fact advised of his Miranda rights, but refused to sign a rights acknowledgment and waiver form, and that he requested counsel on his way back to the jail–after having made his inculpatory statement about owning the firearm found at the scene. Investigator

4

Wade testified that Middleton had asked for an attorney at the conclusion of the interview, when they "were almost out the door leaving the office." R2 at 17. Specifically, Investigator Wade explained that he told Middleton at the conclusion of their interview that, if Middleton wished to talk to him later, he would bring him back to the station to make a formal statement, but that Middleton declined and then requested a lawyer, which was the first time that he had done so.

On direct examination by the government, Investigator Wade testified that Middleton was cooperative and that "[t]here was no outward indication that he should not be interviewed." Id. at 19. Investigator Wade reiterated that he read Middleton his Miranda warnings by going through a standard form that lists the Miranda rights "step by step." Id. at 20-21. He testified that, after advising and explaining these rights, he asked Middleton if he understood his rights, to which Middleton replied that he did, but that he would not sign anything. Investigator Wade then stated that he told Middleton that the police had video evidence of him throwing the gun–a statement which was not true–and that Middleton then voluntarily admitted that the gun was his, but that he did not want to talk about the shooting. Upon hearing this information, Investigator Wade stated that he then told Middleton that "there were some other people there and there might be some circumstances that come up" that would make Middleton want to discuss the facts

5

surrounding the shooting, to which Middleton responded that he did not want to make a statement. Id. at 22. Investigator Wade testified that he was about to take Middleton back to the jail, because he did not want to discuss the incident. As they were getting ready to leave, Investigator Wade stated that Middleton repeatedly said, "look who got shot . . . . [w]hat if they had a gun?" Id. at 23. Investigator Wade responded that, if Middleton wanted to make a statement, Investigator Wade was ready to take it down. Middleton then declined, stating, for the first time, that he wanted to talk to a lawyer first.

In deciding on Middleton's suppression motion, the district court noted that there were "some sharp difference[s]" in Middleton's and Investigator Wade's accounts of the interrogation, but that Investigator Wade reduced his notes into an incident report and gave a "clear and cogent account of the interview which seems . . . to be more likely true than not true." Id. at 25. Finding that the Miranda warnings had been given and that Middleton had made a subsequent incriminating statement, the district court denied Middleton's motion to suppress his admission. Following a jury trial, Middleton was convicted and sentenced to 120 months of imprisonment.

## II. DISCUSSION

"A district court's ruling on a motion to suppress presents a mixed question

6

of law and fact." United States v. Zapata, 180 F.3d 1237, 1240 (11th Cir. 1999) (citation omitted). We accept the district court's factual findings as true unless the findings are shown to be clearly erroneous. United States v. Ramirez-Chilel, 289 F.3d 744, 749 (11th Cir. 2002) (citation omitted). All facts are construed in the light most favorable to the prevailing party below–in this case, the government. See United States v. Bervaldi, 226 F.3d 1256, 1262 (11th Cir. 2000) (citation omitted).

"Credibility determinations are typically the province of the fact finder because the fact finder personally observes the testimony and is thus in a better position than a reviewing court to assess the credibility of witnesses." Ramirez-Chilel, 289 F.3d at 749 (citation omitted). We have held that a "trial judge's choice of whom to believe is conclusive on the appellate court unless the judge credits exceedingly improbable testimony." Id. (citations, alterations, and quotations omitted). That is, a district court's credibility determination is entitled to deference "unless [its] understanding of the facts appears to be unbelievable." Id. (citation and quotations omitted).

We review the district court's application of the law to the facts de novo. United States v. Barbour, 70 F.3d 580, 584 (11th Cir. 1995) (citation omitted). "The district court's ultimate conclusion on the voluntariness of a confession, or

the waiver of <u>Miranda</u> rights, raises questions of law to be reviewed <u>de novo</u>." <u>Id.</u> (citations and quotation omitted).

It is well-established that the government "may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." <u>Miranda</u>, 384 U.S. at 444, 86 S. Ct. at 1612. A waiver of rights under <u>Miranda</u> may be explicit, or it may be implied by the defendant's actions and words. <u>See</u> <u>North Carolina v. Butler</u>, 441 U.S. 369, 373-76, 99 S. Ct. 1755, 1757-59 (1979).

The threshold inquiry in determining whether a waiver of <u>Miranda</u> rights is valid is whether the defendant was informed of his <u>Miranda</u> rights. <u>Barbour</u>, 70 F.3d at 585 (citations omitted). Next, we examine whether a defendant's waiver of <u>Miranda</u> rights was voluntary, knowing, and intelligent. <u>Id.</u> (citation omitted). First, the relinquishment of one's <u>Miranda</u> rights must have been "voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception." <u>Id.</u> (citation omitted). Second, "the waiver must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." <u>Id.</u> (citation omitted). "Only if the 'totality of the circumstances surrounding the interrogation'

8

reveal both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the <u>Miranda</u> rights have been waived." <u>Id.</u> (citation omitted).

The district court's threshold determination that Middleton was read his <u>Miranda</u> rights involved an underlying determination as to Investigator Wade's credibility. That is, Investigator Wade testified that he read and explained to Middleton his rights, and the district court, finding this testimony to be credible, accepted that version of events as true. This finding was made despite Middleton's testimony that Investigator Wade never gave him <u>Miranda</u> warnings. Upon review, we conclude that district court did not clearly err in determining that Investigator Wade's testimony on this point was credible and accepting it as true, because: 1) Investigator Wade had corroborative notes of the interview with Middleton, which indicated that the <u>Miranda</u> warnings were given; 2) Investigator Wade testified that it was his standard practice to read the <u>Miranda</u> warnings to interviewees from a prepared form that he kept his office; and 3) there was nothing in the record showing that Investigator Wade's version of events was "exceedingly improbable." <u>See</u> <u>Ramirez-Chilel</u>, 289 F.3d at 749. Indeed, on appeal, Middleton does not appear to challenge the district court's ultimate finding that Investigator Wade's testimony was credible. Accordingly, we conclude that the threshold

showing that Middleton was advised of his Miranda rights has been satisfied.

We further conclude that the totality of the circumstances establishes that Middleton voluntarily waived his Miranda rights. Investigator Wade testified that Middleton was cooperative during the interview, and that there was no outward indication that Middleton should not have been interrogated. Middleton indicated that he had been arrested before and was aware of his rights under Miranda. Moreover, construing the evidence in a light most favorable to the government and accepting Investigator Wade's testimony as true, the record demonstrates that Middleton made a voluntary statement–admitting ownership of the gun–*after* he had been given Miranda warnings, and that he did not request counsel until after he made that statement, as he was preparing to leave Investigator Wade's office. Investigator Wade repeatedly testified at the suppression hearing that, after the Miranda warnings had been given, Middleton stated that the weapon was his but that he did not want to talk about the shooting. This evidence demonstrates that Middleton was advised of his rights under Miranda, that he understood those rights, and that he impliedly waived those rights by his subsequent conduct during the interview. See, e.g., United States v. Cardwell, 433 F.3d 378, 389-90 (4th Cir. 2005) ("Because [the defendant] had been fully informed and indicated his understanding of his Miranda rights, his willingness to answer [the officer]'s

question is as clear an indicia of his implied waiver of his right to remain silent as we can imagine." (citation omitted)).

Nor does the fact that Middleton made his admission after indicating that he would not sign the rights waiver form suggest that his inculpatory admission was somehow coerced or that it was involuntary. We have made clear that the refusal to sign a rights waiver form, without more, does not establish the absence of an effective waiver under Miranda. See United States v. Dowd, 451 F.3d 1244, 1250-51 (11th Cir. 2006). Indeed, we have held that a defendant may voluntarily make statements (thereby impliedly waiving his Miranda rights), even in the wake of his refusing to sign a written waiver of rights. See id. (concluding that where a defendant "continued talking immediately after declining to sign the waiver" and "did not suggest even equivocally that he wished to cease questioning," the defendant impliedly waived his Miranda rights, notwithstanding his failure to sign the waiver form). Here, Middleton refused to sign the waiver form, but then continued talking with Investigator Wade and made a voluntary statement to him concerning his ownership of the gun. As in Dowd, the fact that Middleton declined to sign the written rights waiver form is not dispositive, where the totality of the circumstances suggests an implied waiver of his rights.

Nor is Middleton's statement involuntary because there was some trickery

involved in eliciting it. We have stated that "[i]t is clear [] that the police's use of a trick alone will not render a confession involuntary." United States v. Castaneda-Castaneda, 729 F.2d 1360, 1362-63 (11th 1984) (citations omitted); see id. (holding that defendant's waiver was voluntary, where agents told him that his wife had already confessed when she had not). Although Middleton's admission was made after being told that the police had evidence that it did not actually have, this single interrogation trick–in the absence of any other aggravating circumstances suggesting coercion on the part of Investigator Wade–does not automatically render Middleton's waiver involuntary. See id. at 1363. This is especially so where the totality of the evidence otherwise establishes that the statement was voluntarily made, free from any coercion. See id. Because, taken as a whole, the totality of the circumstances supports the inference that Middleton voluntarily waived his Miranda rights, the district court did not err in denying his motion to suppress. Accordingly, we affirm Middleton's conviction.

## III. CONCLUSION

Because the district court found testimony that Middleton had been read his rights pursuant to Miranda to be more likely credible than not, and because there was evidence that Middleton was aware of his rights and the consequences of the decision to abandon them, it can be inferred from the totality of the circumstances,

12

including his post-arrest conduct, that Middleton knowingly and voluntarily waived his rights under <u>Miranda</u>. The district court, therefore, did not err in denying his motion to suppress his admission that he possessed a firearm.

**AFFIRMED.**