[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 15-10380

_____

D.C. Docket No. 1:14-cr-20558-BB-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ISAAC SEABROOKS,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(October 19, 2016)

Before HULL, MARTIN, and BALDOCK,[*] Circuit Judges.

HULL, Circuit Judge:

_____

[*]Honorable Bobby R. Baldock, United States Circuit Judge for the Tenth Circuit Court of
Appeals, sitting by designation.

Defendant Isaac Seabrooks appeals his convictions and 188-month total sentence. A jury found him guilty on one count of being a convicted felon in possession of firearms and ammunition, in violation of 18 U.S.C. §§ 922(g)(1) and 924(e), and one count of possessing a stolen firearm, in violation of 18 U.S.C. § 922(j). The district court determined that Seabrooks qualified as an armed career criminal under the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e), because he had six prior Florida armed robbery convictions, each of which qualified as a predicate "violent felony" under the ACCA.

After review of the record and with the benefit of oral argument, we affirm Seabrooks's convictions and sentence.

## I. BACKGROUND

### A.    Offense Conduct

On July 23, 2014, Qonsheka Smith, a park ranger, observed a Cadillac with two occupants, later identified as Nigel Butler and Isaac Seabrooks, pull into a parking lot in Grapeland Park. Butler was driving the Cadillac, which was stolen, and Seabrooks was sitting in the front passenger's seat. Butler and Seabrooks were both convicted felons.

Ranger Smith saw Butler roll down his window as he pulled into the parking lot. Smith observed the Cadillac park next to a vacant green truck owned by Jose Cruz Smith, an individual who was at Grapeland Park to watch his nephew's

2

baseball game.  Shortly after the Cadillac parked next to Cruz's truck, the occupant of a red car pulled into the parking lot, changed the diaper of a child in the car, and drove away.  After the red car left the parking lot, Ranger Smith saw Butler exit the Cadillac, break into the passenger-side door of Cruz's truck, and remove several items from Cruz's truck.

Ranger Smith immediately radioed the police dispatcher to inform the police of a theft in progress.  Ranger Smith described Butler's clothing and the Cadillac to the dispatcher.  Though she mostly tried to remain hidden, Ranger Smith saw Butler remove items from the green truck, place them inside the Cadillac, return to the driver's seat of the Cadillac, and drive away.  Ranger Smith never saw Seabrooks exit the Cadillac.

Soon after the Cadillac drove away, the police arrived in the parking lot, interviewed Ranger Smith for about five minutes, and left.  A short time after the police left, Ranger Smith observed the same Cadillac return to the parking lot.  Ranger Smith radioed the police dispatcher again to inform the police that the Cadillac had returned.  After remaining in the parking lot for some time, the Cadillac attempted to leave the parking lot, but the police arrived and blocked the parking lot exit.

Lieutenant Ariel Rojas, a Miami police officer, pointed his firearm at the driver of the Cadillac and ordered him to exit the vehicle.  In response, Butler, who

3

was still driving, and Seabrooks, who was still in the passenger's seat, put their hands up, exited the vehicle, and laid on the ground. Police officers then arrested Butler and Seabrooks.

After Butler and Seabrooks exited the Cadillac, Rojas looked inside and saw three firearms—(1) a holstered revolver laying on the driver's side floorboard, (2) a semi-automatic pistol, housed in a black gun pouch, laying on top of a cushioned backrest on the passenger's side seat, and (3) a revolver, with no case or holster, wedged between the driver's seat and front passenger's seat. Police officers recovered the firearms from the Cadillac and discovered that they were all loaded.[1]

Police officers contacted Cruz shortly after the theft. Cruz confirmed that his truck was parked at the Grapeland Park parking lot at the time of the theft. Cruz further confirmed that the handle of the passenger-side door of his truck was damaged, as he observed a hole in the handle that was used to gain access to his truck.

Police officers showed the firearms recovered from the Cadillac to Cruz, and Cruz confirmed the firearms were his. Cruz typically stored those firearms inside

---

[1]The indictment charged that the firearms and ammunition stolen from Cruz's truck included: "1. One (1) Raven Arms .25 Caliber pistol; 2. One (1) Amadeo Rossi .38 caliber pistol; 3. Six (6) rounds of .25 caliber ammunition; 4. Four (4) rounds of .38 special caliber ammunition; and 5. Four (4) rounds of .38 caliber ammunition." The third firearm was also a .38 caliber pistol.

his truck.  Cruz kept the firearms in pouches or holsters to protect the surfaces of the firearms.

**B.    Seabrook's Post-Arrest Statements**

Orlando Merced was one of the police officers who responded to the dispatch call to Grapeland Park.  Officer Merced approached a handcuffed Seabrooks to conduct a fingerprint identification with a portable device. Seabrooks asked what the device was for and Officer Merced responded that it was for identification and to see if Seabrooks touched the gun.  Seabrooks stated, "Oh, well, I touched the little gun, Officer . . . . You'll find my fingerprints on the small gun."

In a post-Miranda police interview, Seabrooks admitted that he took all three firearms from Butler and placed them in the console of the Cadillac.  According to Seabrooks, one of the items that Butler handed to him was a black pouch obtained from Cruz's truck.  Seabrooks opened the pouch and saw that it contained a semi-automatic pistol.  Seabrooks stated that he "[didn't] want no guns around [him], period," so he put the gun and pouch in the center armrest.

Seabrooks stated that he did not know Butler intended to steal firearms from Cruz's truck and repeatedly contended that he never got out of the car and, therefore, did not participate in the theft.  Seabrooks explained that the intent was "not to go get no guns," but "[t]he intent was just try to get some money."

5

Seabrooks acknowledged, however, that he remained in the Cadillac while Butler broke into Cruz's truck and handed over the stolen firearms.

When told he was being charged with being a felon in possession of a firearm, Seabrooks was adamant that he did not "possess" any of the firearms, as he only incidentally handled a single firearm that he quickly stored away from his person. In fact, Seabrooks claimed that he and Butler returned to the parking lot so that they could return the guns to Cruz's truck.

## C.    Indictment, Trial, Jury Instructions, and Guilty Verdict

A federal grand jury returned a two-count indictment against Butler and Seabrooks. The indictment charged Butler and Seabrooks each with committing one count of being a convicted felon in possession a firearm and ammunition, in violation of 18 U.S.C. §§ 924(g)(1) and 924(e)(1) (Count 1), and one count of possessing a stolen firearm, in violation of 18 U.S.C. § 922(j) (Count 2). Butler pled guilty to both counts in the indictment. Seabrooks proceeded to trial.

At trial, the government presented several witnesses. In relevant part, Ranger Smith testified about how she witnessed the theft of items from Cruz's truck; Lieutenant Rojas testified about the apprehension of the defendants and the firearms recovered from the Cadillac; and Cruz testified that those firearms were stolen from his truck. While Seabrooks did not testify, the government introduced

6

to the jury Seabrooks's post-arrest statement to Officer Merced, as well as the admissions he made to police in his post-Miranda interview.

Before resting, the government read the jury a stipulation signed by counsel for both parties stating that: (1) Seabrooks previously was convicted of a felony involving theft and the possession of a firearm; (2) Butler previously was convicted of the felony offense of burglary of an unoccupied conveyance; and (3) neither Seabrooks nor Butler had had their rights restored and, therefore, neither was legally allowed to possess a firearm or ammunition.

Prior to closing arguments, Seabrooks objected to the inclusion of an aiding and abetting jury instruction on the grounds that the evidence did not warrant that instruction. The government responded that the instruction was proper, recounting the evidence presented. The district court overruled the objection, concluding that "the aiding and abetting instruction is proper with regard to Mr. Seabrooks'[s] participation."

The district court's jury instruction on aiding and abetting stated:

> It is possible to prove the Defendant guilty of a crime even without evidence that the Defendant personally performed every act charged. Ordinarily, any act a person can do may be done by directing another person or agent or it may be done by acting with or under the direction of others.
> A defendant aids and abets another person if the defendant intentionally joins with a person to commit a crime.
> A defendant is criminally responsible for the acts of another person if the defendant aids and abets the other person.

7

A defendant is also responsible if the defendant willfully directs or authorizes the acts of an agent, employee or other associate. But finding that a defendant is criminally responsible for the acts of another person requires proof that the defendant intentionally associated with or participated with the crime, not just proof that the defendant was simply present at the scene of a crime or knew about it. In other words, you must find beyond a reasonable doubt that the defendant was a willful participant and not merely a knowing spectator.

The jury found Seabrooks guilty on both counts.

## D.    Sentencing

The Presentence Investigation Report ("PSI") recommended a base offense level of 20, pursuant to U.S.S.G. § 2K2.1(a)(4)(B).  The PSI also recommended (1) a 2-level increase under U.S.S.G. § 2K2.1(b)(1)(A) because the offense involved three firearms, (2) a 2-level increase under U.S.S.G. § 2K2.1(b)(4) because the offense involved stolen firearms, (3) a 4-level increase under U.S.S.G. § 2K2.1(b)(6)(B) because Seabrooks possessed the firearms in connection with another felony offense, and (4) a 2-level increase under U.S.S.G. § 3C1.1 for obstruction of justice.  These increases yielded an adjusted offense level of 30.

The PSI noted that Seabrooks was an armed career criminal because on August 13, 1997, he was convicted in Florida state court of armed robbery with a

8

firearm in six separate cases.  Each of those six cases involved armed robberies committed in 1995, on occasions different from one another.[2]

Due to his status as an armed career criminal under § 924(e), Seabrooks's offense level increased from 30 to 33 under U.S.S.G. § 4B1.4(b)(3)(B).  His status as an armed career criminal raised his criminal history category from III to IV under U.S.S.G. § 4B1.4(c)(3).  With a total offense level of 33 and a criminal history category of IV, the PSI recommended an advisory guidelines range of 188 to 235 months' imprisonment.

As to Count 1, Seabrooks's status as an armed career criminal under § 924(e) also raised the statutory minimum from zero to 15 years and the statutory maximum from 10 years to life.  The statutory term applicable to Count 2 was zero to 10 years and remained unaffected by Seabrooks's status as an armed career criminal under § 924(e).

Seabrooks objected to the PSI, contending: (1) he was entitled to a 2-level decrease under U.S.S.G. § 3B1.2 for his minor role in the offenses; (2) the 2-level increase for obstruction of justice did not apply; and (3) he was not an armed career criminal because he lacked the requisite three felony convictions for a "violent felony" or "serious drug offense."

---

[2]The unobjected-to facts in the PSI indicated that, in 1995, Seabrooks robbed with a firearm: (1) a Payless store on September 23; (2) a Payless store on September 28; (3) another Payless store on September 28; (4) a Payless store on October 6; (5) a Texaco station on October 12; and (6) the drive-thru of a Captain Crab restaurant on October 12.

At Seabrooks's January 23, 2015 sentencing hearing, the district court granted Seabrooks's request for a 2-level decrease due to his minor role and sustained his objection to the 2-level increase for obstruction of justice. The district court overruled Seabrooks's armed-career-criminal objection, finding Seabrooks had the requisite predicate convictions under the ACCA.

Because of his armed-career-criminal status, Seabrooks's offense level and criminal history category remained at 33 and IV, respectively, and yielded an advisory guidelines range of 188 to 235 months' imprisonment.

After considering that advisory range and the factors set forth in 18 U.S.C. § 3553(a), the district court sentenced Seabrooks to 188 months' imprisonment on Count 1 and 120 months' imprisonment on Count 2 to run concurrently. Seabrooks appealed his convictions and sentence.

## II.  CONVICTIONS

On appeal, Seabrooks argues that the district court erred by giving the aiding and abetting instruction.

## A.    Standard of Review

We review de novo the legal correctness of jury instructions, but we review the district court's phrasing for abuse of discretion. United States v. Prather, 205 F.3d 1265, 1270 (11th Cir. 2000). Jury instructions are also subject to harmless error review. United States v. House, 684 F.3d 1173, 1196 (11th Cir. 2012). "An

error is harmless if the reviewing court is satisfied 'beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained.'" Id. at 1197.

We review jury instructions "to determine whether the instructions misstated the law or misled the jury to the prejudice of the objecting party." United States v. Gibson, 708 F.3d 1256, 1275 (11th Cir. 2013) (quotation marks omitted). We will not reverse a conviction based on a jury instructions challenge "unless we are 'left with a substantial and ineradicable doubt as to whether the jury was properly guided in its deliberations.'" Id. But "[w]hen the jury instructions, taken together, accurately express the law applicable to the case without confusing or prejudicing the jury, there is no reason for reversal even though the isolated clauses may, in fact, be confusing, technically imperfect, or otherwise subject to criticism." Id. (quotation marks omitted). Moreover, the Supreme Court has admonished that "in reviewing jury instructions, our task is also to view the charge itself as a part of the whole trial," noting that "[o]ften isolated statements taken from the charge, seemingly prejudicial on their face, are not so when considered in the context of the entire record of the trial." United States v. Park, 421 U.S. 658, 675-76, 95 S. Ct. 1903, 1913 (1975) (quotation marks omitted).

## B.    Aiding and Abetting Instruction

"Aiding and abetting need not be specifically alleged in the indictment; assuming the evidence supports it, the accused can be convicted of aiding and

abetting so long as the jury is instructed on it." United States v. Martin, 747 F.2d 1404, 1407 (11th Cir. 1984).  Thus, an aiding and abetting instruction is permissible where the evidence presented would support a conviction for that aiding and abetting offense.  See id.

To prevail under a theory of aiding and abetting, "the [g]overnment must prove: (1) the substantive offense was committed by someone; (2) the defendant committed an act which contributed to and furthered the offense; and (3) the defendant intended to aid in its commission." United States v. Camacho, 233 F.3d 1308, 1317 (11th Cir. 2000).  While mere presence is not sufficient to uphold a conviction for aiding and abetting, "presence . . . coupled with other evidence of guilt can be adequate to sustain the conviction." United States v. Bryant, 671 F.2d 450, 454 (11th Cir. 1982).  We address the § 922(j) conviction first.

## C.    18 U.S.C. § 922(j)

To support a § 922(j) conviction, the government must prove that (1) the defendant possessed a stolen firearm, (2) the firearm was part of interstate commerce,[3] and (3) the defendant knew or had reason to know that the firearms were stolen.  United States v. Smith, 532 F.3d 1125, 1129 (11th Cir. 2008); 18 U.S.C. § 922(j).

---

[3]On appeal, Seabrooks makes no argument regarding the interstate commerce elements of his § 922(j) and § 922(g) offenses.  The government's expert, special Agent Javier Ribas, testified that two of the firearms stolen from Cruz's truck and all ammunition found in all firearms were manufactured outside of Florida and thus had traveled in interstate commerce.

12

Here, the trial evidence showed that Seabrooks aided Butler in committing a § 922(j) violation, thus authorizing the aiding and abetting instruction. Seabrooks was in the Cadillac when Butler parked beside Cruz's truck. Seabrooks was also in the Cadillac with the driver's side window down when Butler left the car, broke into Cruz's truck, and stole the firearms. Seabrooks admitted, during the post-Miranda interview, that he knew Butler was bringing the stolen firearms into the Cadillac. In that interview, Seabrooks stated: "I seen them . . . when [Butler] came in [to the Cadillac] 'cause one of them was not in a pouch and one was, like, inside a pouch but you could see the handle. You could see it." Seabrooks further acknowledged that Butler handed over the firearms to him and Seabrooks placed the firearms in the Cadillac's console. Butler and Seabrooks left the park in the Cadillac and returned a short time later. The stolen firearms were still in the Cadillac when they returned. Seabrooks admitted that he chose to remain in the Cadillac throughout this episode.

A jury could reasonably find that this evidence shows that Seabrooks was a willful participant and assisted Butler in stealing and possessing three firearms. The district court did not err in giving the aiding and abetting instruction.

**D.    New Rosemond Claim as to § 922(j)**

For the first time on appeal, Seabrooks argues, relying on Rosemond v. United States, that to obtain an aiding and abetting instruction on the § 922(j)

13

charge, the government must prove that he had "advance knowledge" of the actions Butler would take. See 572 U.S. __, 134 S. Ct. 1240, 1249 (2014). Seabrooks contends that the government must show that he had advance knowledge that there were firearms in Cruz's truck and that Butler intended to steal them.

Although Seabrooks objected generally to the aiding and abetting instruction at trial, that general objection to the sufficiency of the evidence did not preserve the more specific Rosemond claim he now raises. Cf. United States v. Dennis, 786 F.2d 1029, 1042 (11th Cir. 1986) ("To preserve an issue at trial for later consideration by an appellate court, one must raise an objection that is sufficient to apprise the trial court and the opposing party of the particular grounds upon which appellate relief will later be sought. A general objection or an objection on other grounds will not suffice."). Our review of this Rosemond issue is thus for plain error only. See United States v. Hasson, 333 F.3d 1264, 1277 (11th Cir. 2003).

The government argues that Rosemond does not apply to a § 922(j) crime. The offense in Rosemond was a § 924(c) violation for the use of a firearm during a drug trafficking crime, which requires both (1) participation in the underlying drug crime and (2) the use or carrying of a firearm during that crime. 18 U.S.C. § 924(c). The Rosemond Court noted the compound nature of that offense, calling it a "combination crime" that "punishes the temporal and relational conjunction of

14

two separate acts": the drug crime and the use of a firearm. 134 S. Ct. at 1248. Defendant Rosemond challenged the instruction allowing the jury to consider whether he aided and abetted his confederate in using a firearm during a drug offense.[4]

The Supreme Court explained in Rosemond that "[w]hen an accomplice knows beforehand of a confederate's design to carry a gun, he can attempt to alter that plan or, if unsuccessful, withdraw from the enterprise . . . ." Id. at 1249. By enacting § 924(c), Congress recognized that committing a drug offense with a firearm is more dangerous than committing the predicate drug offense alone. And if the aider and abettor did not know that his confederate would use a firearm during the predicate criminal conduct, he could not have intended to aid in the commission of this more dangerous compound offense. Id. The Rosemond Court noted that an aiding and abetting conviction in a § 924(c) case requires "a state of mind extending to the entire crime." Id. at 1248. Thus, to be guilty of aiding and abetting a § 924(c) violation, the defendant must have "advance knowledge" that

---

[4]In Rosemond, the government presented the jury with alternative theories: (1) that Rosemond himself used a gun during the commission of a drug crime and (2) that Rosemond aided and abetted his confederate in using a gun during a drug crime. The district court gave an aiding and abetting jury instruction. The general jury verdict did not indicate under which theory it found Rosemond guilty, and Rosemond challenged the aiding and abetting instruction on appeal. Rosemond, 134 S. Ct. at 1243-44.

15

his confederate would use or carry a gun during the commission of the predicate

drug offense.[5]  Id. at 1249.

In contrast to a § 924(c) crime, the government contends that in Seabrooks's

§ 922(j) offense, the scienter inquiry is limited to whether the aider and abettor

intended to assist in the confederate's possession of a stolen firearm.  There is no

second crime or act involved.  Possession of a stolen firearm alone is the offense.

Seabrooks thus can be guilty of aiding and abetting the commission of a § 922(j)

offense as long as he intended to facilitate Butler's possession of stolen firearms.

See Rosemond, 134 S. Ct. at 1248.  The government argues that the advance

knowledge principle announced in Rosemond does not apply to § 922(j).  Indeed,

Seabrooks cites no decision applying Rosemond to a § 922(j) crime.  There is no

error, plain or otherwise.

At bottom, we need not decide the Rosemond-§ 922(j) threshold issue

because there is no plain error.  This is because, even if we were to assume

Rosemond somehow applies to a § 922(j) crime, the Supreme Court in Rosemond

---

[5]The Rosemond Court distinguished between the actus reus and mens rea elements of an aiding and abetting violation.  With respect to the affirmative act or actus reus, the Supreme Court said that the defendant need not have aided in the commission of the entire crime.  It is enough that the defendant aided in one part of a multi-element offense.  Rosemond, 134 S. Ct. at 1246-47.  In the context of § 924(c), this means that the defendant's conduct or actus reus is sufficient to warrant aiding and abetting liability where he aided in the commission of the predicate drug offense, but not in the use of a firearm during that underlying offense.  Id.

With respect to the culpable state of mind or mens rea, however, the aiding and abetting theory in a § 924(c) case requires some evidence that the defendant intended to facilitate both the underlying drug offense and the use of a firearm during its commission.  Id.

16

recognized the limited nature of its advance knowledge formulation.  The Rosemond Court noted that an aiding and abetting conviction does not invariably require that the aider and abettor know the extent of his confederate's criminal intentions before he initiates the offense conduct.  Rather, as the Rosemond Court explained, "if a defendant continues to participate in a crime after a gun was displayed or used by a confederate, the jury can permissibly infer from his failure to object or withdraw that he had [advance] knowledge."  134 S. Ct. at 1250 n.9. Put another way, the aider and abettor has the requisite criminal intent where his knowledge of the confederate's use of a firearm is sufficiently in advance such that he can "make the relevant legal (and indeed moral) choice" to participate in the entire § 924(c) offense.  Id.  This means that even where the offense at issue is compound, knowledge of the firearm arising after the initiation of the offense may be sufficient to support an aiding and abetting conviction.

Here, assuming arguendo that advance knowledge is required for aiding and abetting a § 922(j) crime, the evidence was sufficient to support the finding that Seabrooks intended to aid Butler in the commission of the possession offense. Even if Seabrooks was not aware that Butler would possess stolen firearms before he began breaking into Cruz's truck, Seabrooks did not withdraw from the scene once he realized Butler's criminal designs.  Seabrooks watched Butler park beside Cruz's truck, leave the Cadillac, break into Cruz's truck, and steal three guns from

17

within the truck.  He did not choose to leave the Cadillac at this time.  Moreover, Seabrooks received the stolen firearms from Butler and placed them in the Cadillac's console, helping Butler to take possession of firearms that Seabrooks knew were stolen.  He chose to participate in the entire offense, remaining in the Cadillac from the time that Butler broke into Cruz's truck to the time that Butler drove away from the scene of the crime.

This evidence was more than sufficient to allow the jury to draw the reasonable inference that Seabrooks intended to aid Butler in possessing stolen firearms.  Even assuming arguendo that Rosemond somehow applies to aiding and abetting a § 922(j) crime, this is enough evidence to warrant the aiding and abetting instruction in Seabrooks's particular case.  The district court did not plainly err.

**E.    18 U.S.C. § 922(g)**

We turn to the evidence supporting the § 922(g) conviction.  To convict a defendant under 18 U.S.C. § 922(g)(1), the government must prove that:  (1) the defendant was a felon; (2) the defendant knowingly possessed a firearm; and (3) the firearm affected or was in interstate commerce.  United States v. Wright, 392 F.3d 1269, 1273 (11th Cir. 2004).

Again, the jury could reasonably find, based on the trial evidence, that Seabrooks aided Butler in committing a § 922(g) offense.  Seabrooks stipulated

18

that Butler was a convicted felon who could not legally possess a firearm. With the Cadillac's window down, Seabrooks watched Butler break into Cruz's truck and helped Butler by receiving and then placing the firearms in the Cadillac's center console. This evidence, along with Seabrooks's admissions and other evidence outlined above, was sufficient to support the jury's verdict that Seabrooks aided and abetted Butler in the § 922(g) crime. Accordingly, the district court's instruction was not reversible error. See Martin, 474 F.2d at 1407.

## F.    New Rosemond Claim as to § 922(g)'s Possession Element

Seabrooks contends that Rosemond requires that he have advance knowledge that Butler was going to possess a firearm and was a convicted felon. The government disagrees and argues that the act of possessing a firearm is a single act, not compound, and Rosemond does not apply to possession for the reasons outlined above.

Again we need not decide that threshold issue. This is because, even if Rosemond were to apply to the possession element of a § 922(g) crime, the trial evidence sufficiently showed the requisite knowledge. The relevant inquiry, with respect to Rosemond and Seabrooks's state of mind, would be whether the evidence supported the reasonable inference that Seabrooks intended to aid Butler in possessing a firearm. When, from an open car window, Seabrooks saw Butler take the firearms from Cruz's truck and bring them to him in the Cadillac, he had

19

enough knowledge to "make the relevant legal (and indeed moral) choice" to participate in Butler's possession of a firearm.  See Rosemond, 134 S. Ct at 1249, 1250 n.9.  Seabrooks helped Butler take possession of the firearms by receiving them and placing them in the Cadillac's console.  A reasonable jury could find that Seabrooks had the requisite knowledge.

**G.    New Rosemond Claim as to § 922(g)'s Convicted Felon Status Element**

Again relying on Rosemond, Seabrooks separately contends that the aiding and abetting instruction was warranted only if he had advance knowledge that Butler was a convicted felon.

Neither this Court nor the Supreme Court has addressed the question of whether a defendant's knowledge that the principal was a convicted felon is an essential element of the offense of aiding and abetting a § 922(g) violation, and the circuits that have addressed it disagree.  Compare United States v. Canon, 993 F.2d 1439, 1442 (9th Cir. 1993) ("The government did not have to prove Canon, as a principal, knew he was a felon.  No greater knowledge requirement applies to [an aider and abettor].") (citation omitted), with United States v. Ford, 821 F.3d 63, 74 (1st Cir. 2016) ("[T]he government need prove beyond a reasonable doubt that the putative aider and abettor knew the facts that make the principal's conduct criminal.  In [a § 922(g) case], that means that the government must prove that [the defendant] knew that [the principal] had previously been convicted of a crime

20

punishable by more than a year in prison."), United States v. Samuels, 521 F.3d 804, 812 (7th Cir. 2008) ("[T]o aid and abet a felon in possession of a firearm, the defendant must know or have reason to know that the individual is a felon at the time of the aiding and abetting . . . ."), United States v. Gardner, 488 F.3d 700, 715 (6th Cir. 2007) (holding that "in order for aiding-and-abetting liability to attach under § 922(g), the government must show that the defendant knew or had cause to know that the principal was a convicted felon"), and United States v. Xavier, 2 F.3d 1281, 1286 (3d Cir. 1993) ("The government concedes 'proof of knowledge (or reasonable cause to believe) of an ex-felon's status is a required element for conviction, as an aider and abettor, under Section 922(g)(1).' We agree.").

We need not decide this question because there can be no plain error when neither the Supreme Court nor this Court has resolved the issue and other circuits are split. United States v. Evans, 478 F.3d 1332, 1338 (11th Cir.), cert. denied, 552 U.S. 910, 128 S. Ct. 257 (2007). Thus, Seabrooks has not satisfied his burden of demonstrating plain error.

## H.    Jury Confusion

We also reject Seabrooks's claim that the aiding and abetting instruction, along with the government's closing argument, were confusing or misleading. Seabrooks argues, inter alia, that the instruction was misleading by virtue of the fact that the court redacted Butler's name when it read the indictment during voir

21

dire.  According to Seabrooks, this fact confused the jury by suggesting that it could find him guilty of aiding and abetting himself.  Trial witnesses made repeated reference to Butler and discussed his role in the offense.  And both Seabrooks and the government made reference to Butler in their closing arguments.  In fact, Seabrooks stipulated that Butler was a convicted felon who legally was not allowed to possess a firearm.  The aiding and abetting instruction itself made it clear that a defendant can incur liability under an aiding and abetting theory only where he joins with another person in the commission of the crime.

Under the factual circumstances and evidence in this case, Seabrooks has shown no reversible error as to the aiding and abetting instruction.

### III.  SENTENCE

Seabrooks argues that the district court erred by overruling his objection to his armed-career-criminal designation under § 924(e).  Seabrooks asserts that his six prior Florida armed robbery convictions do not qualify as violent felonies under the ACCA.  Whether a particular conviction is a violent felony under the ACCA is a question of law we consider de novo."  United States v. Canty, 570 F.3d 1251, 1254 (11th Cir. 2009).  Although our panel members disagree as to the reasons why, all panel members conclude that Seabrooks is an armed career criminal under § 924(e) because his prior Florida armed robbery convictions under Fla. Stat.

§ 812.13 qualify as violent felonies under the ACCA's elements clause in § 924(e)(2)(B)(i).

Thus, the ACCA, the Florida robbery statute, and the relevant case law are reviewed below.

## A.    The ACCA

A felon in possession of a firearm who has at least three prior convictions "for a violent felony or a serious drug offense, or both, committed on occasions different from one another," is subject to an enhanced statutory penalty under the ACCA.  18 U.S.C. § 924(e)(1).  The ACCA defines the term "violent felony" as any crime punishable by a term of imprisonment exceeding one year that:

(i)     has as an element the use, attempted use, or threatened use of physical force against the person of another; or

(ii)    is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

*Id.* § 924(e)(2)(B).  The first prong is referred to as the "elements clause."  The second prong contains the "enumerated crimes" and the "residual clause."  United States v. Owens, 672 F.3d 966, 968 (11th Cir. 2012).

Armed robbery is not an enumerated crime, and the Supreme Court has held that the residual clause is unconstitutionally vague.  Johnson v. United States, 576 U.S. __, __, 135 S. Ct. 2551, 2557-58, 2563 (2015).  This case involves only the elements clause.  Thus, the salient question is whether a conviction for armed

23

robbery with a firearm under Florida law "has as an element the use, attempted use, or threatened use of physical force against the person of another." 18 U.S.C. § 924(e)(2)(B)(i). In other words, does a Florida armed robbery conviction qualify as a "violent felony" under the ACCA's elements clause?

## B.     Florida Robbery Statute

Seabrooks committed his armed robbery offenses in 1995. Florida's robbery statute in § 812.13 sets forth the elements of robbery and armed robbery as follows:

> (1)  "Robbery" means the taking of money or other property which may be the subject of larceny from the person or custody of another, with intent to either permanently or temporarily deprive the person or the owner of the money or other property, when in the course of the taking there is the use of <u>force, violence, assault, or putting in fear</u>.
>
> (2)(a)  If in the course of committing the robbery the offender carried a firearm or other deadly weapon, then the robbery is a felony of the first degree, punishable . . . as provided in s. 775.082, s. 775.083, or s. 775.084.

Fla. Stat. § 812.13 (1995) (emphasis added). Robbery requires that in the course of the taking there is either "the use of force, violence, assault, or putting in fear." Id. § 812.13(1). The requirement of "force, violence, assault, or putting in fear" has been in the robbery statute from at least the 1970's.[6] Robbery under § 812.13(1)

---

[6]In 1992, however, the robbery statute in § 812.13(1) was amended to add this language: "with intent to either permanently or temporarily deprive the person or the owner of the money or other property." 1992 Fla. Sess. Law Serv. Ch. 92-155 (West). But the language of "the use of force, violence, assault, or putting in fear" did not change.

24

does not involve a firearm and is a second-degree felony.  Id.  § 812.13(2)(c).

Armed robbery requires that the defendant "carried" a firearm or other deadly

weapon and is a first degree felony.  Id.  § 812.13(2)(a).

Because the robbery statute has included the requirement of "force, violence,

assault, or putting in fear" from the 1970's to the present, it is helpful to review our

decisions about § 812.13 robbery convictions through the years.

## C.    Eleventh Circuit Decisions in Dowd and its Progeny

In 2006, this Court held that a 1974 Florida conviction for armed robbery "is

undeniably a conviction for a violent felony" under the ACCA's elements clause.

United States v. Dowd, 451 F.3d 1244, 1255 (11th Cir. 2006).  This Court, citing

only the elements clause, "conclude[d] without difficulty" that the defendant's

Florida armed robbery conviction qualified as a violent felony.  Id.

This Court has followed Dowd in several recent cases.  In re Hires, 825 F.3d

1297 (11th Cir. 2016) (rejecting the claim that Descamps v. United States, 570

U.S. __, 133 S. Ct 2276 (2013), undermined our precedent in Dowd and holding

that the defendant's 1995 Florida robbery conviction qualified as a violent felony

under the ACCA's elements clause, which includes "any felony that 'has as an

element the use, attempted use, or threatened use of physical force'"); In re

Thomas, 823 F.3d 1345, 1349 (11th Cir. 2016) (citing Dowd and holding that the

defendant's 1980 and 1986 Florida "convictions for armed robbery qualify as

25

ACCA predicates under the elements clause"); In re Moore, 830 F.3d 1268, 1271 (11th Cir. 2016) (concluding that the defendant's two Florida robbery-with-a-firearm convictions and his armed robbery conviction "qualify as violent felonies under our binding precedent" in Dowd and Thomas).[7]  Accordingly, under Dowd and its progeny, a Florida armed robbery conviction, such as Seabrooks's, categorically qualifies as a violent felony under the ACCA's elements clause.

I am mindful that Judge Martin and I view Dowd differently.  My view is that Dowd and its progeny control under our prior panel precedent rule discussed below.  Judge Martin's view is that Dowd "is no longer good law."

Judge Baldock's concurrence declines to reach any issue about Dowd because (1) "United States v. Lockley, 632 F.3d 1238 (11th Cir. 2011) answers in the affirmative the question of whether [Seabrooks] qualifies as an armed career criminal for federal sentencing purposes," and (2) "[t]hat prior precedent is controlling on this panel with or without United States v. Dowd."  Judge Baldock "would resolve the sentencing issue in this case on the basis of Lockley alone."

As an independent and alternative ground for affirmance, I likewise conclude that, under "Lockley alone," Seabrooks "qualifies as an armed career criminal for federal sentencing purposes."  Therefore, I next discuss Lockley since

---

[7]Counsel represented each of the defendants in In re Hires, In re Thomas, and In re Moore, all of which had briefing.  In each case this Court denied on the merits the defendant's application to file a second or successive § 2255 motion challenging an ACCA sentence that was based on a prior Florida robbery or armed robbery conviction.

at bottom we all agree it binds us as to Seabrooks's 1997 armed robbery convictions.

**D.      Eleventh Circuit Decision in <u>Lockley</u>**

In <u>Lockley</u>, this Court held that a Florida robbery conviction under § 812.13(1), even without a firearm, qualifies as a "crime of violence" under the elements clause in the career offender guideline in U.S.S.G. § 4B1.2(a), which has the same elements clause as the ACCA. <u>Lockley</u>, 632 F.3d at 1245; <u>In re Robinson</u>, 822 F.3d 1196, 1197 (11th Cir. 2016) (citing <u>Lockley</u> and concluding in an ACCA case that the defendant's 1991 armed robbery offense has "as an element the use, attempted use, or threatened use of physical force against the person of another"). As outlined below, <u>Lockley</u> focused on the elements in the Florida robbery statute.

Applying the pure categorical approach in <u>Lockley</u>, this Court examined the elements of a robbery offense under Florida law, starting with "the taking of money or other property." <u>See</u> § 812.13(1); <u>Lockley</u>, 632 F.3d at 1240 ("We . . . disregard the facts of the underlying conviction and look only to the elements of Lockley's prior conviction."). Applying Florida law about the elements, the <u>Lockley</u> Court found (1) that the taking must be by use of force, violence, assault, or putting the victim in fear, and (2) that "the fear contemplated by the statute is the fear of death or great bodily harm," stating:

The taking referred to 'must be by the use of force or violence or by assault so as to overcome the resistance of the victim, or by putting him in fear so that the victim does not resist.' Fla. Std. Jury Instr. (Crim.) 15.1. The property taken need not be taken from the actual person of the victim, but must be sufficiently under his control "so that it cannot be taken without the use of force, violence, or intimidation directed against the victim." Id. Assault, in turn, is defined as "an intentional, unlawful threat by word or act to do violence to the person of another, coupled with an apparent ability to do so, and doing some act which creates a well-founded fear in such other person that violence is imminent." Fla. Stat. § 784.011(1). And, "[t]he fear contemplated by the statute is the fear of death or great bodily harm." Magnotti v. State, 842 So. 2d 963, 965 (Fla. 4th Dist. Ct. App. 2003) (internal quotation marks omitted).

632 F.3d at 1242 (footnote omitted).

The Lockley Court then concluded that the "commission of robbery in violation of Fla. Stat. § 812.13(1) necessarily requires that the defendant":

(1) commit a taking of money or other property from another person or in the custody of another person (2) with the intent to permanently or temporarily deprive the person of the money or property or any benefit thereof (3) using force, violence, or an intentional threat of imminent force or violence against another coupled with an apparent ability to use that force or violence, or by causing the person to fear death or great bodily harm (4) where the money or property has value.

Id. at 1242-43 (emphasis added). Applying the categorical approach, the Lockley Court analyzed the least culpable of the acts in § 812.12(1), which was "putting in fear." The Lockley Court stressed that (1) "'putting in fear,' per Florida law, involves an act causing the victim to fear death or great bodily harm," (2) "[w]e can conceive of no means by which a defendant could cause such fear absent a threat to the victim's person," and (3) "[t]he

28

bare elements of § 812.13(1) . . . satisfy the elements . . . clause[] of U.S.S.G. § 4B1.2(a)." Id. at 1244-45 (citation omitted) (footnote omitted).

Later on, the Lockley Court repeated that (1) "robbery under that statute requires either the use of force, violence, a threat of imminent force or violence coupled with apparent ability, or some act that puts the victim in fear of death or great bodily harm," (2) "[a]ll but the latter option specifically require the use or threatened use of physical force against the person of another," (3) "we find it inconceivable that any act which causes the victim to fear death or great bodily harm would not involve the use or threatened use of physical force," and (4) "[s]ection 812.13(1) accordingly has, as an element, the 'use, attempted use, or threatened use of physical force against the person of another.' U.S.S.G. § 4B1.2(a)(1)." Id. (emphasis added). In Lockley this Court thus held that Florida robbery is categorically a crime of violence under the elements of even the least culpable of these acts criminalized by Fla. Stat. § 812.13(1).

As Judge Baldock's concurrence notes, even without Dowd, Seabrooks's armed robbery convictions qualify as ACCA-violent felonies under Lockley.

## E.    Binding Prior Precedent

Given Judge Martin's concurrence would discard Dowd, I also explain why our prior panel precedent rule requires that both Dowd and Lockley be followed. Under our well-established prior panel precedent rule, the holding of Dowd, as the

29

first panel to address the ACCA-Florida armed robbery issue, "is the law of this Circuit, thereby binding all subsequent panels unless and until the first panel's holding is overruled by the Court sitting en banc or by the Supreme Court." Smith v. GTE Corp., 236 F.3d 1292, 1300 n.8 (11th Cir. 2001). Under the prior panel precedent rule, our subsequent panel in Seabrooks cannot overrule a prior one's holding in Dowd even if convinced it is wrong. See United States v. Steele,147 F.3d 1316, 1318 (11th Cir. 1998) (en banc).

It is also irrelevant whether the panel in Dowd (or Lockley for that matter) considered all possible issues or arguments. See Tippitt v. Reliance Standard Life Ins. Co., 457 F.3d 1227, 1234 (11th Cir. 2006) (explaining that "a prior panel precedent cannot be circumvented or ignored on the basis of arguments not made to or considered by the prior panel"); Cohen v. Office Depot, 204 F.3d 1069, 1076 (11th Cir. 2000) (noting that the prior panel precedent rule does not depend on "a subsequent panel's appraisal of the initial decision's correctness").

Accordingly, Dowd and Lockley control the outcome of this case in favor of the government unless their holdings have been overruled by this Court sitting en banc or by the U.S. Supreme Court. Smith, 236 F.3d at 1300 n.8. Seabrooks does not contend that any en banc decision of this Court overrules Dowd or Lockley. Rather, in an effort to overcome the prior precedent rule, Seabrooks argues that Dowd and Lockley are undermined by the Supreme Court's decision in Curtis

30

Johnson v. United States, 559 U.S. 133, 130 S. Ct. 1265 (2010). As explained below, Seabrooks's argument fails.

**F.      Curtis Johnson v. United States (2010)**

First, Seabrooks ignores that Lockley was decided after, and even cited, Curtis Johnson. This is yet an additional reason that Lockley binds us here. See Smith, 236 F.3d at 1303 ("[W]e categorically reject any exception to the prior panel precedent rule based upon a perceived defect in the prior panel's reasoning or analysis as it relates to the law in existence at that time.").

Second, and in any event, nothing in Curtis Johnson, a simple battery case, undermines our binding precedent in Dowd or Lockley about robbery and armed robbery crimes. In Curtis Johnson, the Supreme Court considered whether the Florida offense of simple battery by "touching" another person had as an element the use of physical force. 559 U.S. at 135, 130 S. Ct. at 1268. The Supreme Court noted that a conviction for simple battery "ordinarily is a first-degree misdemeanor . . . but is a third-degree felony for a defendant who (like Johnson) has been convicted of battery (even simple battery) before." Id. at 136, 130 S. Ct. at 1269. Thus, Curtis Johnson's simple battery conviction was for only touching, conduct that was a misdemeanor but for his prior conviction.

Furthermore, Curtis Johnson did not involve (1) an act that put the victim "in fear of death or great bodily harm," which Lockley held that "putting in fear"

31

under Florida robbery law requires, or (2) the "attempted" or "threatened use of physical force," which is also included in the elements clause. See Lockley, 632 F.3d at 1244; see also Leocal v. Ashcroft, 543 U.S. 1, 8-9, 125 S. Ct. 377, 382 (2004) (discussing negligence and cautioning that "[w]e do not deal here with an attempted or threatened use of force."). Seabrooks cannot use Curtis Johnson to circumvent Dowd or Lockley.

**G.    Mathis and Descamps**

Seabrooks also argues that Dowd and Lockley are undermined by Mathis v. United States, 579 U.S. __, 136 S. Ct. 2243 (2016) (Iowa burglary and the enumerated crimes clause) and Descamps, 570 U.S. at __, 133 S. Ct at 2282 (California burglary and the enumerated crimes clause). Of course, Mathis and Descamps involved neither Florida robbery nor the elements clause.

More importantly, these Supreme Court decisions actually underscore why both Lockley and Dowd were correctly decided. In both Mathis and Descamps, the Supreme Court instructed that in determining whether a state conviction qualifies as a predicate under the ACCA, courts first examine the elements of the statute of conviction and not the particular underlying facts of the defendant's crime. Mathis, 579 U.S. at __, 136 S. Ct. at 2251-52; Descamps, 570 U.S. at __,

32

133 S. Ct. at 2283.  This is known as the categorical approach.[8]  Id.  Mathis also tells us to look to state court decisions interpreting state criminal statutes.  Mathis, 579 U.S. at __, 136 S. Ct. at 2256-57.

As explained above, Lockley applied that pure categorical approach, examined the statutory elements, and reviewed the relevant Florida court decisions. Dowd too was not based on the particular underlying facts of the defendant's crime, but was based on the armed robbery conviction being "undeniably," or in other words categorically, a violent felony.  Nothing in Mathis or Descamps undermines Dowd or Lockley.[9]

## H.    Sudden Snatching Statute Enacted in 1999

In another effort to avoid our binding Lockley precedent, Seabrooks stresses that he was arrested in 1995 and convicted in 1997.  Seabrooks contends that because defendant Lockley was convicted in 2001, the Lockley decision should be narrowly limited to only robbery convictions that occurred after 1999,

---

[8]Mathis and Descamps also address the modified categorical approach, which applies when a state statute lists elements in the alternative and defines multiple crimes.  Mathis, 579 U.S. at __, 136 S. Ct. at 2249; Descamps, 570 U.S. at __, 133 S. Ct. at 2284-85.  If the statute sets out multiple crimes and is divisible, the courts may use the modified categorical approach and look at certain record documents.  Id.  In this case, we need not decide if the robbery statute is divisible or indivisible because Seabrooks's armed robbery conviction qualifies under the categorical approach in any event.  Further, we need not discuss § 812.13(2), where a firearm or deadly weapon is an element, because robbery under § 812.13(1), even without a firearm, qualifies as a violent felony under Lockley.

[9]Judge Martin's concurrence mainly criticizes Dowd's cursory mode of analysis, but it is Dowd's holding that counts.  And Lockley, which had a robust analysis, shows Dowd is correct.

when Florida enacted a sudden snatching criminal statute.[10]  Seabrooks argues that, before the enactment of that 1999 statute, the least culpable means of committing a robbery under § 812.13(1) was not "putting in fear," but was mere "sudden snatching" of a purse without any physical force or any putting in fear.

One problem for Seabrooks is that Lockley's holding was not based on an artificial time divide between before and after Florida's enactment of the 1999 sudden snatching statute.  Rather and importantly, Lockley's holding was based on the actual requirements of the robbery crime in Florida's robbery statute, § 812.13(1), specifically "force, violence, assault, or putting in fear," which have not changed from the 1970's to the present.  That is why Lockley's holding—that a Florida robbery has as an element "the use, attempted use, or threatened use of physical force"—controls Seabrooks's 1997 armed robbery convictions, just as it did defendant Lockley's 2001 robbery convictions.

Lockley alone is enough.  But there is more.  The Florida Supreme Court itself has concluded that a Florida robbery conviction has never included mere

---

[10]Florida's sudden snatching statute requires only a taking and no physical force:
(1) "Robbery by sudden snatching" means the taking of money or other property from the victim's person, with intent to permanently or temporarily deprive the victim or the owner of the money or other property, when, in the course of the taking, the victim was or became aware of the taking.  In order to satisfy this definition, it is not necessary to show that:
(a) The offender used any amount of force beyond that effort necessary to obtain possession of the money or other property; or
(b) There was any resistance by the victim to the offender or that there was injury to the victim's person.
Fla. Stat. § 812.131 (1999) (emphasis added).

34

snatching because snatching is theft only and does not involve the degree of physical force needed to sustain a robbery conviction under § 812.13(1).  Robinson v. State, 692 So. 2d 883, 886 (Fla. 1997); McCloud v. State, 335 So. 2d 257, 258-59 (Fla. 1976); Montsdoca v. State, 93 So. 157, 159 (Fla. 1922).  In 1997, the Florida Supreme Court in Robinson pointed to its own 1976 decision in McCloud and stressed that robbery requires "more than the force necessary to remove the property" and in fact requires both "resistance by the victim" and "physical force by the offender" that overcomes that resistance, stating:

> In accord with our decision in McCloud, we find that in order for the snatching of property from another to amount to robbery, the perpetrator must employ more than the force necessary to remove the property from the person.  Rather, there must be resistance by the victim that is overcome by the physical force of the offender.

Id.  In Robinson, the Florida Supreme Court reaffirmed that "[t]he snatching or grabbing of property without such resistance by the victim amounts to theft rather than robbery."  Id. at 887.  The Robinson court further stated that "Florida courts have consistently recognized that in snatching situations, the element of force as defined herein distinguishes the offenses of theft and robbery."  Id.  In other words, Robinson reaffirmed that merely snatching property—without resistance by the victim and use of physical force to overcome the victim's resistance—did not constitute a robbery under § 812.13(1).

35

When the Florida Supreme Court in <u>Robinson</u> interprets the robbery statute, it tells us what that statute always meant. <u>Rivers v. Roadway Express, Inc.</u>, 511 U.S. 298, 312-13 (1994) ("A judicial construction of a statute is an authoritative statement of what the statute meant before as well as after the decision giving rise to that construction."); <u>id.</u> at 313 n.12 ("[W]hen this Court construes a statute, it is explaining its understanding of what the statute has meant continuously since the date when it became law."). This is patently true here because <u>Robinson</u> said its holding was "[i]n accord with [its] decision in <u>McCloud</u>" in 1976.[11]

Indeed, since 1922, the Florida Supreme Court has held that "[t]he force that is required to make the offense a robbery is such force as is actually sufficient to overcome the victim's resistance." <u>Montsdoca</u>, 93 So. at 159 (Fla. 1922). Notably, the Florida Supreme Court instructed: "There can be no robbery without violence, and there can be no larceny with it. It is violence that makes robbery an offense of greater atrocity than larceny." <u>Id.</u>

---

[11]Judge Martin's concurrence quotes <u>McCloud</u> out of context. The Florida Supreme Court in <u>McCloud</u> emphasized that the defendant exerted such physical force that the victim fell to the ground and the defendant attempted to kick the victim, stating:

> The facts developed at McCloud's trial indicate that he gained possession of his victim's purse not by stealth, but by exerting physical force to extract it from her grasp. McCloud's victim carried her handbag by a strap which she continued to hold after the purse had been seized by McCloud. She released the strap only after she fell to the ground. Furthermore, there was evidence the jury could believe which showed that McCloud attempted to kick his victim while she lay on the ground and after the purse had been secured.

335 So. 2d at 259. This was the "physical force" evidence that the Florida Supreme Court relied on to sustain McCloud's robbery conviction under § 812.13(1).

36

## I.    <u>Welch</u>'s Holding Is Based on Only the Residual Clause

Because Judge Martin's concurrence relies heavily on dicta in <u>United States v. Welch</u>, 683 F.3d 1304 (11th Cir. 2012), that case is discussed.  To place that dicta in context, it must be noted that this Court in <u>Welch</u> held only that a 1996 Florida robbery conviction was a violent felony under the ACCA's <u>residual clause</u>. The <u>Welch</u> Court did not decide any elements clause issue because it concluded that a snatching "suffices under the [ACCA's] residual clause." <u>Id.</u> at 1313. Simply put, <u>Welch</u> contains no ruling, much less a holding, about Florida's robbery statute under the elements clause. [12]  In any event, we are bound to follow <u>Dowd</u> (2006) and <u>Lockley</u> (2011), not <u>Welch</u> (2012) as to the elements clause.

I do recognize that the defendant in <u>Welch</u> made the same argument Seabrooks does—that <u>Lockley</u> is distinguishable "because Lockley was convicted [in 2001] after Florida promulgated the 'sudden snatching' statute [in 1999], so snatching from the person might furnish the basis for a robbery conviction here but not in <u>Lockley</u>." <u>Id.</u> at 1310, 1312.  But, as demonstrated above, <u>Lockley</u> focused on the elements in the robbery statute and made no temporal distinction between

---

[12]After <u>Welch</u> was decided, <u>Johnson</u> held that the ACCA's residual clause was unconstitutionally vague.  576 U.S. at __, __, 135 S. Ct. at 2557-58, 2563.  Welch's § 2255 motion then argued that <u>Johnson</u> applied retroactively to his sentence.  The Supreme Court agreed and remanded Welch's § 2255 motion to this Court to determine whether the district court's denial was correct "on other grounds" than the residual clause.  The Supreme Court noted that "the parties continue to dispute whether Welch's strong-arm robbery conviction qualifies as a violent felony under the elements clause of the Act." <u>See</u> <u>Welch v. United States</u>, 578 U.S. __, __, 136 S. Ct. 1257, 1268 (2016).

before and after the enactment of the sudden snatching statute. Welch's dicta about sudden snatching is not just dicta, but wrong dicta.[13]

## J.    In re Jackson's Discussion of Lockley

To be complete, In re Jackson, 826 F.3d 1343 (11th Cir. 2016), cited Lockley and suggested in dicta that Lockley might be distinguished by a possible temporal dividing line between "pre-2000" Florida robberies and post-2000 robberies. In making this suggestion, the In re Jackson Court said that (1) Lockley "construed a very different statutory scheme"; (2) that "[i]n 2000, the Florida legislature separated robbery by sudden snatching into its own statute" in Fla. Stat. § 812.131; and (3) "Lockley analyzed this later scheme and held that this new version of § 812.13(1) met United States Sentencing Guidelines § 4B1.2's 'elements clause' definition." Id. at 1346-47 (emphasis added). While Florida in 1999 did enact a new sudden snatching statute codified at § 812.131, Florida did not change the separate § 812.13(1) robbery statute. There is no "new version of § 812.13(1)" in 1999.

---

[13]Although Judge Martin's concurrence acknowledges that Welch ruled on only the residual clause, not the elements clause, it suggests that Welch's analysis binds us. The concurrence cherry picks phrases and ignores that, even as to its residual-clause analysis, the Welch Court said that it only "assume[d] for purposes of analysis that Welch pleaded guilty to robbery at a time when mere snatching sufficed." Welch, 683 F.3d at 1311-12. Thus, even as to its residual-clause analysis, Welch contains no holding about whether sudden snatching sufficed for Florida robbery prior to 1997. The concurrence cites Santiago, but it involved a substantial degree of force in that the "defendant reached into a car and tore necklaces off of a victim's neck, leaving scratch marks." Id. at 1311 n.32 (citing Santiago v. State, 497 So. 2d 975, 976 (Fla. 4th Dist. Ct. App. 1986)). In any event, we look to the highest state court decision, which is the Florida Supreme Court in Robinson and its interpretation of its own precedent in McCloud.

Because the requirement of "force, violence, assault, or putting in fear" in the § 812.13(1) robbery statute has remained the same, our prior panel precedent in Dowd and Lockley involves that same statute and binds us here.  See, e.g., Cohen v. Office Depot, Inc., 204 F.3d 1069, 1072 (11th Cir. 2000) ("[W]here two prior panel decisions conflict we are bound to follow the oldest one."); United States v. Hornaday, 392 F.3d 1306, 1316 (11th Cir. 2004) ("Where there is a conflict between a prior panel decision and those that came before it, we must follow the earlier ones."); Burke-Fowler v. Orange County, 447 F.3d 1319, 1323 n.2 (11th Cir. 2006) ("[W]hen a later panel decision contradicts an earlier one, the earlier panel decision controls.").  In fact, that Lockley necessarily applies to Seabrooks's 1997 Florida convictions illustrates why there is no artificial "pre-2000" dividing line as to Florida's robbery statute in § 812.13(1).[14]

## IV.  CONCLUSION

For all of these reasons, we affirm Seabrooks's convictions and 188 months' sentence.

**AFFIRMED.**

---

[14]The In re Jackson Court stated in a footnote that "the bulk of Lockley's analysis (at least 13 paragraphs of the opinion) focused on the argument . . . [that] 'robbery is an enumerated offense' in § 4B1.2's application note."  826 F.3d at 1347 n.2.  But, as shown above, Lockley had an extensive analysis of why a Florida robbery conviction categorically qualifies under the elements clause and squarely held it did.  In any event, the In re Jackson decision granted the defendant's application to file a successive § 2255 motion but did not decide the question of whether Jackson's 1975 robbery conviction qualified under the elements clause.  Id. at 1346-47.

BALDOCK, Circuit Judge, concurring as to Parts I, II, and III.D, and in the judgment:

I concur in Parts I, II, and III.D of the Court's opinion.  But the remainder of Part III of the opinion gives me pause.  All members of the panel agree that United States v. Lockley, 632 F.3d 1238 (11th Cir. 2011), answers in the affirmative the question of whether Defendant qualifies as an armed career criminal for federal sentencing purposes.  That prior precedent is controlling on this panel with or without United States v. Dowd, 451 F.3d 1244 (11th Cir. 2006).  Accordingly, unlike my Eleventh Circuit colleagues, I would resolve the sentencing issue in this case on the basis of Lockley alone and leave for another day the question of the continuing viability of Dowd.

MARTIN, Circuit Judge, concurring in the judgment:

I agree with the result that Mr. Seabrooks's conviction and sentence are due to be affirmed. I therefore join Parts I and II of the Court's opinion. However, I decline to join Part III of Judge Hull's opinion. I believe it reaches legal issues beyond those necessary to decide this case. Yet because Judge Hull has written broadly about Mr. Seabrooks's sentencing claims, I will set out my contrary view. No two judges on this panel have joined together in Judge Hull's alternative ruling on Mr. Seabrooks's sentencing claims. That means that this panel opinion stands only for the rule that our Circuit precedent in United States v. Lockley, 632 F.3d 1238 (11th Cir. 2011) requires Mr. Seabrooks's 1997 Florida convictions for armed robbery to be counted in support of his 2015 Armed Career Criminal Act ("ACCA") sentence. Neither my views nor those of Judge Hull create Circuit precedent beyond that.

## I.

The ACCA caps a federal prison sentence at ten years, except when the person being sentenced has been convicted of three or more violent felonies or other serious crimes in the past. 18 U.S.C. § 924(a)(2). For Mr. Seabrooks, this means his 188-month sentence can stand only if his 1997 armed robbery convictions qualify as violent felonies within the meaning of the ACCA's elements clause. 18 U.S.C. § 924(e)(2)(B)(i) ("As used in this subsection . . . the term

41

'violent felony' means any crime punishable by imprisonment for a term exceeding one year . . . that has as an element the use, attempted use, or threatened use of physical force against the person of another."). So Mr. Seabrooks's challenge to his sentence requires us to evaluate whether each of his earlier convictions "has as an element the use, attempted use, or threatened use of physical force against the person of another." Id.

We know we cannot look at the actual facts that led to Mr. Seabrooks's armed robbery convictions when we conduct this evaluation. Descamps v. United States, 133 S. Ct. 2276, 2283 (2013). Instead, Supreme Court precedent requires us to look at the elements of the statute of conviction to see whether, in the abstract, someone could have been convicted under that statute based on conduct that does not require the use, attempted use, or threatened use of physical force against the person of another. See Mathis v. United States, 136 S. Ct. 2243, 2251 (2016). This is known as the categorical approach.

In applying the categorical approach here, we must examine whether Fla. Stat. § 812.13 required the use, attempted use, or threatened use of "violent force," Curtis Johnson v. United States, 559 U.S. 133, 140, 130 S. Ct. 1265, 1271 (2010) (interpreting "physical force" in the elements clause), or a "substantial degree of force," United States v. Owens, 672 F.3d 966, 971 (11th Cir. 2012) (holding that second-degree rape in Alabama doesn't require "physical force" as defined by

42

Curtis Johnson), when Mr. Seabrooks was convicted of violating that statute in 1997. If it didn't—if acts involving lower levels of force could be the basis for an armed robbery conviction under the statute—then Mr. Seabrooks's armed robbery convictions do not meet the definition of violent felonies under the elements clause.

In recent years, the Supreme Court has clarified the analytical steps that make up the categorical approach. First, we must "presume that the conviction rested upon nothing more than the least of the acts criminalized" by the state statute. Moncrieffe v. Holder, 133 S. Ct. 1678, 1684 (2013) (alterations adopted and quotation omitted). This is often referred to as the "least culpable conduct." See Donawa v. U.S. Att'y Gen., 735 F.3d 1275, 1283 (11th Cir. 2013) (citing Moncrieffe, 133 S. Ct. at 1685). To identify the least culpable conduct criminalized by the statute, we look to how state courts interpret the statute. See Curtis Johnson , 559 U.S. at 138, 130 S. Ct. at 1269–70 ("We are [] bound by the Florida Supreme Court's interpretation of state law . . . in determining whether a felony conviction for battery under Fla. Stat. § 784.03(2) meets the definition of 'violent felony' in 18 U.S.C. § 924(e)(2)(B)(i)."); see also United States v. Rosales-Bruno, 676 F.3d 1017, 1021 (11th Cir. 2012) ("[W]e look to Florida case law to determine whether a conviction under § 787.02 necessarily involves the employment of 'physical force' as that term is defined by federal law."). And as

part of this step, we must analyze "the version of state law that the defendant was actually convicted of violating." McNeill v. United States, 563 U.S. 816, 821, 131 S. Ct. 2218, 2222 (2011).

Second, after identifying the "least of the acts criminalized" by the state statute, we must then figure out whether the least of "those acts are encompassed by the generic federal offense." Moncrieffe, 133 S. Ct. at 1684 (alteration adopted and quotation omitted). That means here we examine whether those acts involve the use, attempted use, or threatened use of violent force or a substantial degree of force. If they do, then the defendant's earlier conviction under the state statute is categorically a violent felony under the ACCA's elements clause, and it can be counted to support an enhanced ACCA sentence of at least fifteen years.

But if the "least of the acts criminalized" by the state statute do not involve the use, attempted use, or threatened use of violent force or a substantial degree of force, then we move on to a third step. The third step asks whether the statute was divisible. A statute is divisible when it has "multiple, alternative elements, and so effectively creates several different crimes." Descamps, 133 S. Ct. at 2285 (alteration adopted and quotation omitted). "This means a jury must be required to find one of the alternative elements beyond a reasonable doubt, rather than just convict under a statute that happens to list alternative definitions or alternative means for the same crime without requiring jurors to pick which one applies."

44

United States v. Lockett, 810 F.3d 1262, 1267 (11th Cir. 2016).  If the state statute was divisible at the time the defendant was convicted of violating it, and if at least one but not all of the different crimes created by the statute count as violent felonies under the ACCA's elements clause, then we must employ the "modified categorical approach."  Descamps, 133 S. Ct. at 2283 (quotation omitted).  This approach allows us to look at certain documents from the state proceedings to see if the defendant's conviction was for a crime that qualifies as a violent felony under the elements clause.  Id.  On the other hand, if the statute was not divisible (or as we say, indivisible), then that is the end of it.  The defendant's earlier conviction is not a violent felony under the ACCA's elements clause, and it cannot be used to support a sentence of more than ten years.

## II.

Judge Hull concludes that under United States v. Dowd, 451 F.3d 1244 (11th Cir. 2006), Mr. Seabrooks' armed robbery convictions qualify as violent felonies under the ACCA's elements clause.[1]  But in light of the clarifications given to us by the Supreme Court about what steps we must take when applying the categorical approach, Dowd is no longer good law.

---

[1] In her discussion of Dowd, Judge Hull writes for herself.  Judge Baldock and I have not joined in Part III.C of her opinion.

The <u>Dowd</u> opinion concluded "without difficulty" that Mr. Dowd's 1974 Florida armed robbery conviction counted as a violent felony under the elements clause. <u>Id.</u> at 1255. But <u>Dowd</u> did not conduct the required categorical analysis. The entirety of <u>Dowd</u>'s reasoning occupies one sentence: "Dowd's January 17, 1974, armed robbery conviction is undeniably a conviction for a violent felony [under the ACCA's elements clause]." <u>Id.</u> <u>Dowd</u>'s reasoning was not sufficient to support its holding, much less this one too.

But even if <u>Dowd</u>'s reasoning was adequate under the categorical approach at the time it was published in 2006, the Supreme Court has since made it clear that we must do more. Judge Hull says that because <u>Dowd</u> did not look to the underlying facts of Mr. Dowd's prior conviction, <u>Dowd</u> correctly applied the categorical approach. But the Supreme Court has since emphasized in <u>Curtis Johnson</u>, <u>Moncrieffe</u>, and <u>Descamps</u> that when applying the categorical approach, we must undertake the rigorous step-by-step analysis I've described here. Nowhere did the <u>Dowd</u> opinion: (1) consult state law to identify the least culpable conduct for which an armed robbery conviction could be sustained; (2) analyze whether that least culpable conduct was encompassed by the generic federal offense; or (3) discuss whether the Florida armed robbery statute was divisible. It only stated the conclusion (again, in one sentence) that a 1974 Florida armed robbery conviction counts as a violent felony.

46

The Supreme Court's jurisprudence since <u>Dowd</u> clarifying how we must apply the categorical approach is "clearly on point" and "has undermined" <u>Dowd</u>'s conclusory mode of analysis "to the point of abrogation." See <u>Archer</u>, 531 F.3d at 1352 (quotation omitted) (concluding that <u>Begay v. United States</u>, 553 U.S. 137, 128 S. Ct. 1581 (2008), was clearly on point and abrogated <u>United States v. Gilbert</u>, 138 F.3d 1371 (11th Cir. 1998), because it "clearly set forth a new standard" to evaluate which crimes qualify as violent felonies under the ACCA, even though <u>Begay</u> addressed a different crime than <u>Gilbert</u>). After <u>Curtis Johnson</u>,[2] <u>Moncrieffe</u>, and <u>Descamps</u>, reliance on <u>Dowd</u> disregards the Supreme Court's direction to us. Indeed, it elevates the one-sentence rationale in <u>Dowd</u> over recent Supreme Court precedent.

Judge Hull says that several of our recent "cases" have also followed <u>Dowd</u>. I do not see this as an accurate report on the status of <u>Dowd</u>. She does not mention that these "cases" were orders issued on applications to file second or successive §

---

[2] I gather Judge Hull would confine the lesson from the Supreme Court in <u>Curtis Johnson</u> to cases in which a defendant has a prior conviction for simple battery. This is not the way our court applies binding Supreme Court precedent. There are thousands of state criminal statutes that our court might need to evaluate in reviewing sentences imposed under the ACCA. The Supreme Court's caseload will not permit it to evaluate each of those statutes, and even if it did, we would be shirking our responsibility if we sat back and waited the years that it would take for the Supreme Court to address every one of them. We must apply the broader principles given to us by the Court in cases like <u>Curtis Johnson</u>. And in fact, our court has applied the principles of <u>Curtis Johnson</u> outside of the simple battery context. See, e.g., <u>Rosales-Bruno</u>, 676 F.3d at 1021–22 (applying <u>Curtis Johnson</u> to a Florida false imprisonment conviction); <u>United States v. Romo-Villalobos</u>, 674 F.3d 1246, 1248-49 (11th Cir. 2012) (applying <u>Curtis Johnson</u> to a Florida conviction for resisting a law enforcement officer); <u>Owens</u>, 672 F.3d at 671 (applying <u>Curtis Johnson</u> to an Alabama second-degree rape conviction).

2255 motions.  See In re Hires, 825 F.3d 1297 (11th Cir. 2016); In re Thomas, 823 F.3d 1345 (11th Cir. 2016); In re Moore, 830 F.3d 1268 (11th Cir. 2016).  These rulings were made under a statutory directive that sets them apart from merits decisions that result from the deliberative process required of United States appellate courts.

When Courts of Appeals rule on applications from prisoners who want to file a second or successive habeas petition, the governing statute limits our role to merely deciding whether a prisoner has made a prima facie showing that his claim involves "a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable."  28 U.S.C. § 2255(h)(2).[3]  And because the decision on whether to allow a second or successive motion is not a ruling on the merits of a prisoner's habeas claims, the process by which we make these rulings falls well short of what one expects for decisions requiring precedential deference.  These applications are almost always filed by prisoners with no lawyers.  They include no briefs.  In fact, the form used by prisoners for these applications forbids the prisoner from filing briefs or any attachments, unless the form is filed by a prisoner suffering under a death sentence.

---

[3] The statute also allows a prisoner to file a second or successive habeas petition if he has made a prima facie showing that his claim relies on "newly discovered evidence" that "would be sufficient to establish by clear and convincing evidence that no reasonable factfinder would have found the movant guilty of the offense." 28 U.S.C. § 2255(h)(1).  Hires, Thomas, and Moore did not address new evidence claims.  Mr. Seabrooks is before us on direct appeal.

<u>Application for Leave to File a Second or Successive Motion to Vacate, Set Aside</u>

<u>or Correct Sentence</u>, U.S. Ct. of Appeals Eleventh Circuit (last updated Jan. 2,

2001), http://www.ca11.uscourts.gov/sites/default/files/courtdocs/clk/

Form2255APP.pdf.  The statute requires us to act on these applications within

thirty days.  28 U.S.C. § 2244(b)(3)(D).  Unlike our Court's merits decisions, the

statute strictly prohibits any review of our rulings on these applications.  <u>Id.</u> §

2244(b)(3)(E).  Our Court has even ruled that we can't consider a prisoner's

application if that prisoner has already made substantively the same claims in an

earlier application.  <u>In re Baptiste</u>, 828 F.3d 1337 (11th Cir. 2016).  This makes it

possible for a three-judge ruling (or even a two-judge ruling) on one of these

applications to say things rejected by every other member of the court.

It is neither wise nor just for this type of limited ruling, resulting from such a

confined process, to bind every judge on this court as we consider fully counseled

and briefed issues in making merits decisions that may result in people serving

decades or lives in prison.  The fact that some of this court's limited rulings on

these applications referenced <u>Dowd</u> should have no bearing on our merits decision

here.  <u>Dowd</u> has been abrogated and no longer binds us on the merits.

### III.

While I reject Judge Hull's reliance on <u>Dowd</u>, I agree that the outcome of

this case is controlled by <u>United States v. Lockley</u>, 632 F.3d 1238 (11th Cir.

2011).[4] Lockley considered whether a 2001 Florida attempted robbery conviction under § 812.13(1) counts as a "crime of violence" within the meaning of the identically-worded elements clause of the Sentencing Guidelines. See id. at 1240. To answer this question, the Lockley panel applied the categorical approach. First, it identified the least culpable conduct sufficient to support a robbery conviction to be taking by putting the victim in fear. Id. at 1244. Next, the Lockley panel looked to Florida law and said that "putting in fear" involved acts that cause the victim to fear death or great bodily harm. Id. Finally, the panel found it "inconceivable" that any conduct causing this kind of fear wouldn't involve the use or threatened use of physical force. Id. at 1245. Based on this analysis, Lockley said that Mr. Lockley's attempted robbery conviction constitutes a violent crime as defined by the elements clause of the Sentencing Guidelines. Id. Thus, Lockley requires us to uphold Mr. Seabrooks's sentence.

Mr. Seabrooks argues that Lockley does not govern his case because the robbery statute encompassed "sudden snatching" when he was convicted in 1997, in contrast to when Mr. Lockley was convicted in 2001. Mr. Seabrooks points to the enactment of Fla. Stat. § 812.131, a "robbery by sudden snatching" statute.

---

[4] Judge Hull also mentions In re Robinson, 822 F.3d 1196 (11th Cir. 2016), which is an Order issued on Mr. Robinson's application seeking to file a second or successive § 2255 motion. It was issued under the confined conditions I described above. Lockley (by itself) supports our ruling on Mr. Seabrooks's sentence, and there is no need to invoke In re Robinson to that end.

Section 812.131 says that a person who takes property from a victim's person with intent to deprive has committed "sudden snatching" even if he didn't "use[] any amount of force beyond that effort necessary" to take the property, and even if the victim didn't resist and was never injured. Mr. Seabrooks argues that before Florida enacted § 812.131 in 1999, "sudden snatching" was enough to support a robbery conviction under § 812.13. He says this means "sudden snatching," not "putting in fear," was the least culpable conduct sufficient to support a robbery conviction under § 812.13 when he was convicted. And he continues that because Lockley used "putting in fear" as the least culpable conduct in its categorical analysis, it does not control our ruling in this case.

Mr. Seabrooks's argument fails because at the time he was convicted in August of 1997, the controlling Florida Supreme Court decision interpreting § 812.13 held that robbery requires the perpetrator to use "more than the force necessary to remove the property from the person"—that is, "physical force" that "overcome[s]" the "resistance [of] the victim." Robinson v. State, 692 So. 2d 883, 886 (Fla. 1997). Thus, "sudden snatching" as defined by § 812.131—that is, taking property without "us[ing] any amount of force beyond that effort necessary" to take the property and without any resistance from the victim—was not criminalized by § 812.13 after Robinson, when Mr. Seabrooks was convicted.

51

However, I do not agree with Judge Hull's statement that the "force, violence, assault, or putting in fear" requirement in § 812.13, as interpreted by Florida courts, has not changed since the 1970s.  This observation is not necessary to deciding Mr. Seabrooks's case, and it goes too far in any event.  In support of this statement, Judge Hull points to language in Robinson that suggests that § 812.13 had always required something more than sudden snatching.[5]  This reasoning ignores the guidance given to us by the Supreme Court about how to conduct the categorical analysis.  McNeill, 563 U.S. at 820, 131 S. Ct. at 2222 ("The only way to answer this backward-looking question is to consult the law that applied at the time of that conviction.").  Before Robinson was decided, the controlling Florida Supreme Court decision interpreting § 812.13 held that a defendant who "exert[ed] physical force to extract [a handbag] from [the victim's] grasp" had committed robbery because "[a]ny degree of force suffices to convert larceny into a robbery."  McCloud v. State, 335 So. 2d 257, 258–59 (Fla. 1976) (emphasis added).  That means that people convicted under § 812.13 after McCloud in 1976 (but before Robinson in 1997) could have had their convictions sustained under the statute when they merely used "any degree of force."  The U.S.

_____

[5] It's generally true that when a court interprets a statute it tells us what the statute has always meant.  But here our interest is not about divining the true meaning of § 812.13.  Rather, our interest is in understanding what conduct could have resulted in Mr. Seabrooks's 1997 convictions under the statute, even if Florida courts were misinterpreting the statute at that time.

52

Supreme Court's instruction to us in <u>McNeill</u> does not allow us to ignore this interpretation by the Florida Supreme Court.

Judge Hull says that I have applied <u>McCloud</u> out of context, but if I've done so, I'm in good company. The Florida Court of Appeals for the Fourth District—the district where Mr. Seabrooks was convicted—applied <u>McCloud</u> to hold that tearing a necklace from a victim's neck involved "sufficient force, <u>be it ever so little</u>, to support robbery." <u>Santiago v. State</u>, 497 So. 2d 975, 976 (Fla. 4th DCA 1986) (emphasis added). So in the real world, people were being prosecuted and convicted under Florida's robbery statute for using minimal force during the time that <u>McCloud</u> was the controlling precedent. The particular facts underlying <u>McCloud</u> can't erase that reality.

Another problem with relying on <u>Robinson</u> for the proposition that § 812.13 has never included sudden snatching is that it's plainly foreclosed by our decision in <u>United States v. Welch</u>, 683 F.3d 1304 (11th Cir. 2012). Again, the Supreme Court has told us to "turn[] to the version of state law that the defendant was actually convicted of violating" when applying the categorical approach. <u>McNeill</u>, 563 U.S. at 821, 131 S. Ct. at 2222. In looking to the version of § 812.13 under which Mr. Welch was convicted in 1996, the <u>Welch</u> panel acknowledged and even discussed <u>Robinson</u>, but it did not adopt <u>Robinson</u>'s contention that sudden snatching had never been sufficient to support a conviction under § 812.13.

53

Rather, it identified sudden snatching as the least culpable conduct for which a person could be convicted under the statute, because Mr. Welch was convicted in 1996, before Robinson was decided.  683 F.3d at 1311.  And 1996 was "a time when the controlling Florida Supreme Court authority held that 'any degree of force' would convert larceny into a robbery."  Id. (quoting McCloud, 335 So. 2d at 258–59).

Judge Hull correctly observes that Welch analyzed Fla. Stat. § 812.13 under a different part of the ACCA than we address today, but Welch's mode of analysis still binds us.  Just as we are called upon to do today, Welch analyzed a Florida robbery conviction under the categorical approach.  In its categorical analysis, Welch looked to McCloud, but not to Robinson, to conclude that sudden snatching was the least culpable conduct for which a person could have been convicted under § 812.13 in 1996.  Id. at 1310–14.  This determination was necessary to Welch's holding that the 1996 Florida robbery conviction was categorically a violent felony under the residual clause of the ACCA.  Welch therefore binds us whenever we apply the categorical approach to analyze a Florida robbery conviction from a time before the Florida Supreme Court decided Robinson.

In any case, Judge Hull's remark that the elements of § 812.13 have not changed since the 1970s is not necessary to our decision to affirm Mr. Seabrooks's sentence.  Mr. Seabrooks was convicted after the Florida Supreme Court decided

54

Robinson, so his § 812.13 conviction required more than sudden snatching.  As a result, we are bound by Lockley and must affirm Mr. Seabrooks's enhanced sentence under the ACCA.

I analyze Mr. Seabrooks's case in a different way than does Judge Hull, but I agree that his conviction and sentence must be affirmed.